### No. 10,153.

### NEW ORLEANS GAS LIGHT COMPANY vs. MAURICE J. HART.

The right conferred on the Gas Light Company by its charter, to lay mains in the streets of New Orleans, does not imply that of erecting lamp-posts at the corner of such streets and of retaining them there indefinitely, when it does not furnish the city with gas, and there exists no contract between it and the city to that effect.

The right granted by the city to a party to erect towers or supports to carry wires and cable for electric purposes and to remove obstructions to such erections, cannot be contradicted by one who does not claim a concurrent right.

The city of New Orleans, in the exercise of its police power, has the right of removing such obstructions for public convenience and benefit, and may delegate such power.

The police power is the right of a State, or of a State functionary, acting under delegated authority, to prescribe regulations for the good order, peace, protection, convenience and comfort of the community, without encroaching on the like power vested in Congress by the Federal Constitution. It is known when and where it begins, but not when and where it terminates. Under it, a man's property may be taken from him, his liberty may be shackled, his person and life imperilled, in cases of great public exigencies.

APPEAL from the Civil District Court for the Prrish of Orleans. *Tissot, J.*

*Braughn, Buck, Dinkelspiel & Hart* for Plaintiff and Appellant.

*Farrar, Jonas & Kruttschnitt* for Defendant and Appellee:

1. Upon the facts of this case plaintiff has shown no right whatever to maintain its lamp posts on the streets of the city of New Orleans.
2. A city may, in the exercise of its police powers, unquestionably make all necessary provisions with respect to the poles and wires of all telegraph, telephone, or electric light companies, within its limits, which the comfort and convenience of the community may require. W. U. Telegraph Co. vs. Pendleton, 122 U. S. 359; Mut. U. Telegraph Co. vs. City of Chicago, 16 Fed. Rep. 315.
3. Only a person having a right and interest to invoke the unconstitutionality of a law, as affecting himself, his property and his rights, can plead such unconstitutionality. Moore vs. City of N. O. 32 Ann. 746.

*Blanc & Butler* and *W. H. Rogers* on the same side.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The object of this suit is to enjoin perpetually the defendant from removing the lamp-posts erected by the plaintiff company in this city.

In defence, it is alleged that plaintiff has no right to oppose the removal when the same is unnecessary, and that the defendant has the right to take down the posts, under the authority delegated to him by the city in the exercise of the police power.

From a judgment dissolving the injunction issued *in limine* and rejecting the demand with recognition of the right to remove claimed by the defendant, the plaintiff prosecutes this appeal.

The contention in this controversy, arises under Section 5 of Ordinance No. 2145, C. S., adopted on March 8, 1887, by the City Council of New Orleans, providing for the erection and construction, upon the streets, of a system of towers, or supports, for the purpose of carrying all wires and cables, whether for telephone, electric light, telegraph, or other electrical objects, and authorizing the defendant to put up such towers, and to remove obstacles to such erection.

The ordinance provides that, whenever in the course of construction or erection of any of said towers, or supports, it shall be found necessary to remove or displace any post, pole, awning, sign, support, or other thing in or upon the public places, banquettes or streets, the said grantee, his heirs, agents, assigns and successors shall have the right

to remove said post, pole, awning, sign, support or thing or things, and to occupy the place or places from which said removal shall have been made.

There is no dispute about the facts.

The plaintiff company has erected numerous lamp-posts at the corners of the sidewalks in the city, for the purpose of vending gas light to it and illuminating the streets and thoroughfares. The contracts for thus supplying this commodity have expired and others have been entered into for electric illumination.

Testimony establishes the danger to life and limb, in cases of fire, from contact with electric wires with the *apparatus* of the fire department, both when they approach buildings and when they fall upon the ground. It also shows the infinite number of electric wires strung on posts about the streets of the city for different objects, a fact so notorious that it may be judicially noticed.

The plaintiff shows no contract with the city to put up and *keep indefinitely* the lamp-posts which it has erected for the purpose of supplying light to the city, when none is furnished, for the use of the public. It alleges its charter from the State, granting it the right to lay gas mains about the streets; but it avers no authority from the State to put up and keep lamp-posts upon the public streets or corners when the community is not actually benefitted thereby.

It is a fact that the defendant claims the right, and was about to exercise it, of removing such lamp-posts erected by the plaintiff company, found at spots at which towers are proposed to be elevated.

We understand the company to contend that the defendant has no such right, *because* it has a contract whereby it is entitled to put up and keep the posts; *because* the right claimed by the defendant would arise from a prohibited monopoly; *because* the city herself could not remove the posts and even then delegate the power.

1. It is apparent, from the charter of the company, the right to erect and keep lamp-posts on the corners of sidewalks in New Orleans was in no way granted it by the Legislature, although that of laying mains on the streets themselves was formally conferred; but the privilege of laying such mains does not imply, unless *ex necessitate*, that of erecting posts at those corners on the sidewalks. The mains are designed to supply gas to all consumers, whether the city, to corporations, or to individuals, and may be and are used for those purposes; but it naturally occurs, that when the city ceases to be a consumer, the right of the company ceases to have lamp-posts on its sidewalks.

Hence, it cannot be claimed that the plaintiff has any absolute contract right to preserve its lamp-posts at those particular spots, and that the action of the municipal authorities has impaired that right, although we do not propose to say that even the city, in the exercise of her police powers, could not, in a proper case, have done by herself what she has authorized another to do.

2. The plaintiff contends, further, that the rights granted by the city to the defendant amount to a monopoly which comes within the ban of Article 48 of the State Constitution.

To this, it is sufficient to answer, that it is a principle, well founded, that no one can be heard to complain of and charge the unconstitutionality of the grant of an exclusive right or privilege, who does not assert a similar conflicting right.

This rests upon the plain and common-sense reason that it must be to such person a matter of utter significance, who exercises that right or privilege, whether he be one that does so exclusively or not.

If it be true that the city has the right to operate the removal, what is it to the plaintiff that the city do it, by her immediate servants, or causes it to be done by some specially designated person, as in the instant case ?

3. The last objection to be considered is, whether the city could have exercised the right of removal of the obnoxious lamp-posts.

That right the city possesses as an inherent concomitant of the police power.

So far, that power has not received a full and complete definition ; but it may be said to be the right of a State, or of a State functionary, to prescribe regulations for the good order, peace, protection, comfort and convenience of the community, which do not encroach on the like power vested in Congress by the Federal Constitution.

Of that power, it may well be said, that it is known when and where it begins ; but not when and where it terminates. It is a power, in the exercise of which a man's property may be taken from him, where his liberty may be shackled, and his person exposed to destruction, in cases of great public emergencies. See Dillon on Mun. Corp. 3d Ed. Vol. 1, p. 166-7, and Barr vs. State, 34 Ann. 424, where numerous authorities are quoted.

In a kindred case, the United States Supreme Court said :

" The Supreme Court of Indiana placed its decision in support of the Statute, principally upon the ground that it was the exercise of the police power of the State. Undoubtedly, under the reserved powers of the State, which are designated under that somewhat

ambiguous term of police powers, regulations may be prescribed by States, for the good order, peace and protection of the community. The subjects upon which the State may act are almost infinite, yet, in its regulations, with respect to all of them, there is this necessary limitation, that the State does not encroach upon the free exercise of the power vested in Congress by the Constitution. Within that limitation, it may, undoubtedly, make all necessary provisions with respect to the buildings, poles and wires of telegraph companies in its jurisdiction, which the comfort and convenience of the community may require." Western Union Telegraph Co. vs. Pendleton, 122 U. S. 359.

A similar question having been presented to the United States Circuit Court in Chicago, Ill., the learned Court held, that it is entirely competent for the city authorities, unless they are bound by some absolute contract permitting the poles and wires to stand as they are, to have them removed, and put an end to such unsightly obstructions as the poles and wire are in the streets. There must be a power somewhere, to cause them to be removed, and to regulate and control the manner in which telegraph lines shall enter, or pass through the city. Mutual Union Teleg. Co. vs. Chicago, 16 Fed. Rep. 309.

The city of New Orleans has the undoubted right which a citizen would have, and has, who would have agreed with the Gas Company to illuminate his house for a stated time, and to furnish therefor the necessary appliances. Clearly, at the expiration of the contract, the citizen could require the removal of the appliances, not only because of their appearance, their proving an obstruction to the enjoyment of his property, but also, and particularly, if they were dangerous, some way or other. *Quia placet*, in the end, would be a sufficient reason for the removal.

Now, in the present case, it is clear that the city has the transmissible right to require the removal, not only because the lamp-posts are no longer needed and used for public service, but also because the city needs the very spots on which they happen to have been erected, and it is proposed to utilize those places for other useful and beneficial purposes, and has the exclusive right, under her charter, to regulate the use of the streets and thoroughfares, within her limits.

It is unnecessary to enumerate the benefits expected to be derived from the towers mentioned in the ordinance, the legality of which is maintained, as they are no important factors in the case.

Judgment affirmed.