Williams *et al. v.* The Citizens' Railway Company.

Filed Dec. 15, 1891.

———————◆———————

No. 15,160.

WILLIAMS ET AL. *v.* THE CITIZENS' RAILWAY COMPANY.

MUNICIPAL CORPORATIONS.—*Act for Incorporation of Cities.—Right of Court to Decide Controversies Concerning Private Rights.*—The act for the incorporation of cities does not take from the courts authority to decide legal controversies concerning personal or property rights, and does not vest in the common councils of cities the power to determine such controversies.

SAME.—*Use of Street to Move House.—Destruction of Private Property.*—The moving of a house along a public street of a city is an extraordinary use thereof for an unusual purpose, which may be controlled or denied; and the owner of such a house can not insist on so moving it if such moving will result in the destruction of the property of others.

STREET RAILWAYS.—*Moving House Across Track.—Destruction of Wires.—Failure of Council to Act.*—The courts have the power to restrain the moving of a house across a street electric railroad when such moving will result in the stopping of the cars an unnecessary length of time, and the cutting or destruction of the wires, even though the common council of the city have failed or refused to take any steps to prevent such injury or destruction.

CORPORATION.—*Ultra Vires.—Collateral Attack.*—If there is an assumption of corporate rights and functions, and an exercise of such claims and functions under claim and color of law, only the State can question the validity of the assumption and exercise of such functions and rights; and an individual can not successfully assail them in a collateral proceeding.

From the Elkhart Circuit Court.

*H. C. Dodge,* for appellants.

*J. H. Baker* and *F. E. Baker,* for appellee.

ELLIOTT, C. J.—The complaint contains these material allegations : That the appellee is a corporation, organized under the laws of the State for the purpose of constructing an electric street railway upon the streets of the city of Elkhart ; that it is authorized to operate a railway with any kind of motive power except steam ; that it is authorized to erect poles and stretch wires along the streets for the purpose of operating its line of railway, by means of electricity ; that it has constructed its tracks, erected poles, stretched wires and procured electrical appliances for the purpose of operating its railway ; that in so doing it has expended more than eighty-eight thousand dollars ; that it has constructed its tracks, erected poles, and made necessary connections for operating a line upon Main street, in the city of Elkhart, under the right and authority conferred upon it; that its railway tracks upon that street have been, and are used by it in conducting its business as a public carrier of passengers, and for such purpose are, and have been, in constant use ; that the interruption of its business would interrupt a public service and use much needed by the public ; that one of the defendants is the owner of a frame building, which it has employed one of its co-defendants to move upon and along Main street, and the work of moving the building has been commenced ; that the building is so large that it can not be moved along Main street without destroying the wires of the plaintiff, and entirely stopping the movement of its cars on Main street, and other streets of the city ; that the defendants are threatening to cut, or otherwise destroy the wires, and to stop the running of cars ; that they are moving the house so rapidly that the building will reach Main street within three hours; that the injury which they threaten to do will be irreparable, and will wholly prevent the use of the street and cause the plaintiff great damage ; that the building can be moved without passing on Main street. Prayer for an injunction.

The point first made by the appellants' counsel in his as-

sault upon the complaint is, that "the Elkhart Circuit Court had no jurisdiction." In support of this point it is argued that the common council of the city has exclusive jurisdiction over the city streets, and that the court could, therefore, have no jurisdiction of the general subject. We are referred to the cases of *Kistner* v. *City of Indianapolis,* 100 Ind. 210, and *Wood* v. *Mears,* 12 Ind. 515, but it is palpably evident that these cases are not relevant to the present controversy. It needs neither argument nor authority to make good the proposition that the act for the incorporation of cities does not take, nor mean to take, from the courts the authority to decide legal controversies concerning personal or property rights, and vest in the common council of cities the power to determine such controversies. The decision of such controversies must be made by judicial tribunals, and to them an injured party has a right to appeal for a vindication of his rights.

A failure, or refusal, of the common council of a city to take steps to prevent the injury or destruction of a line of railway does not preclude the owner from seeking redress in the courts of the State. Where a right to use a street is acquired pursuant to statute, and under a license from the municipality, it is in the nature of a contract right, and the municipality itself can not destroy nor materially impair it. The courts must decide all controversies in which such rights are involved. *Indianapolis, etc., R. R. Co.* v. *Citizens St. R. R. Co.,* 127 Ind. 369. See authorities collected in Elliott Roads and Streets, 564, notes 1 and 2.

It is undoubtedly true that all such rights are subordinate to the paramount power usually denominated the police power, for that power can not be annihilated by contract. *Jamieson* v. *Indiana, etc., Co.,* 128 Ind. 555. See, also, authorities cited in Elliott Roads and Streets, 573, note. But here no question concerning the nature of that great power is presented.

The contention that the appellee must fail because there

is no statute authorizing the use of electricity as a motive power for propelling cars along a line of street railway can not prevail, for the reason that the appellants are not in a position to make available the doctrine they assert, even if it should be granted that the doctrine is sound.

There is plausibility, at least, in the argument of the appellee's counsel that a just and reasonable construction of the statute providing for the incorporation of street railway companies authorizes the employment of any kind of motive power now in common use except steam. The terms " street railway " or " horse railway " may possibly be considered as generic terms, and if so their use would not necessarily imply that only animals can be employed for propelling cars. But we feel that it is neither necessary nor proper for us to attempt to give an authoritative decision of this question in the present case, and we refrain from doing so. Our conclusion upon this branch of the case must be placed upon another ground.

In the case before us the municipal council passed an ordinance authorizing the use of electricity as a motive power. The company, acting under this grant, has used, and is using, electricity. The company has, at least, assumed to organize as a corporation under the laws of the State, and to organize for the purpose of operating a street railway employing electricity as the motive power for the propulsion of its cars along its tracks. It has assumed under color of law and claim of right—if, indeed, its assumption is not founded on stronger grounds—to exercise corporate functions as an electric street railway company. We can see no reason why the case is not governed by the rule that where there is an assumption of corporate rights and functions, and an exercise of such rights and functions under claim and color of law, only the State can question the validity of the assumption and exercise of such functions and rights, and an individual can not successfully assail them in a collateral proceeding. The case seems to us, indeed, to be one

strongly invoking the application of the rule. *Brookville, etc., T. P. Co.* v. *McCarty,* 8 Ind. 392; *Aurora, etc., R. R. Co.* v. *City of Lawrenceburgh,* 56 Ind. 80; *White* v. *State,* 69 Ind. 273; *Baker* v. *Neff,* 73 Ind. 68; *Logan* v. *Vernon, etc., R. R. Co.,* 90 Ind. 552, and authorities cited. Interesting discussions of the general subject will be found in the cases of *New Orleans, etc., Co.* v. *Hart,* 40 La. Ann. 474; *Taggart* v. *Newport, etc., R. W. Co.* (R. I.), 19 Atl. R. 326; *Williams* v. *City Electric, etc., R. W. Co.,* 41 Fed. Rep. 556; *Potter* v. *Saginaw, etc., R. W. Co.,* 83 Mich. 285.

If it were conceded that the acts of the corporation were beyond its powers, it is, nevertheless, quite clear that an individual can not insist that its corporate existence has terminated, or that he may, at his pleasure, confiscate or destroy its property. It would violate the plainest principles of law to permit an individual citizen to confiscate or destroy the property of a corporation which has assumed to exercise rights under the laws of the State, and to which the officers of a governmental subdivision have given recognition by granting to it the right to use the streets of a city. This would be true even in a case where no extraordinary claim was asserted by the individual, and certainly is true where an individual claims the right to make an extraordinary use of the public treets.

The appellants in this case are not asking to be allowed to make an ordinary use of the streets of the city; they are, on the contrary, asking that they be permitted to use the streets in an extraordinary mode and for an unusual purpose. *Day* v. *Green,* 4 Cush. 433; *Graves* v. *Shattuck,* 35 N. H. 257. See authorities cited in note 2, Elliott Roads and Streets, p. 578.

If the appellants were asking to be allowed to make use of the street in the ordinary mode, we should have a very different case, but that is not what they demand. To concede their demands would be to assert a doctrine that would authorize an individual to interrupt traffic on great lines of

railways running through a city at his pleasure, no matter how grave the injury that would result from such an interruption to the public or the railway companies. It is not to be forgotten that the public have interests in such a controversy as this, as well as private corporations, and an individual who seeks to disturb the public right will find no favor where the claim he asserts is an extraordinary one, such as that here asserted. That the demand in this case is an extraordinary one is shown by the authorities to which we have here referred, but it may be made more plain by simply saying that the purpose for which highways are laid out and dedicated is that of travel in the usual modes. It would be strange, indeed, if large buildings could be moved along the thronged streets of a city without control or restriction; and it would be equally strange if the owner of a building could destroy the property of others in order to enable him to move his building from one place to another.

We are not in this case concerned with the question as to whether a house may be moved across a street railway track where no injury will be done and where only a few minutes' suspension of traffic will be caused; for here the complaint and the special finding show that the appellee's property would be destroyed and traffic interrupted for many hours if the appellants were permitted to do what they have attempted and threatened to do.

Judgment affirmed.

Filed Dec. 15, 1891.