772    NEBRASKA REPORTS.    [Vol. 68

Nebraska Telephone Co. v. Western Independent Long Distance Telephone Co.

NEBRASKA TELEPHONE COMPANY, APPELLANT, V. WESTERN
INDEPENDENT LONG DISTANCE TELEPHONE COMPANY
ET AL., APPELLEES.

FILED APRIL 30, 1903.    No. 12,744.

1. Telephone and Telegraph Companies: USE OF STREETS: NUISANCE.
The term "public roads," in section 14, chapter 89a, Compiled
Statutes, giving telegraph and telephone companies a right of
way along the public roads of the state, does not include the
streets and alleys of a municipal corporation, and the unau-
thorized use of such thoroughfares for such purpose constitutes
a public nuisance.

2. Equity. A court of equity will not lend its aid to protect a suitor
in maintaining a public nuisance, nor in the doing of an act
punishable under the laws of the state.

APPEAL from the district court for Cass county: BENJA-
MIN F. GOOD, DISTRICT JUDGE. *Affirmed.*

*W. W. Morsman* and *Matthew Gering,* for appellant.

*Byron Clark* and *C. A. Rawls, contra.*

ALBERT, C.

This is an action for relief by injunction. The petition,
so far as is necessary to show the ground upon which the
action is based, is as follows:

"For more than fifteen years last passed, this plaintiff
has been and now is engaged in the prosecution of the
telephone business in the state of Nebraska, operating ex-
changes and long distance lines, and during the said period
has, at all times, been, and is now, in the actual possession
and enjoyment, under the laws of the state of Nebraska,
of a right of way upon one of the public roads of the state,
upon and along which it maintains its poles, with cross-
arms extending two and one-half feet on each side of the
centre of said pole, and which said cross-arms support
plaintiff's wires, all for the transmission of communica-
tions by telephone between plaintiff's patrons, and which

said public road passes through and constitutes the main public road or street, and is commonly known as Main street, in the village of Louisville, in the county of Cass, in the state of Nebraska.

"2. The plaintiff's said poles are all set out on the same side of the said public road, where the same passes through the village aforesaid, and plaintiff's said poles and cross-arms support four wires used for long distance telephony. Plaintiff's poles are twenty-five feet high, and set at distances from each other of about 125 feet, and the wires thereon are carried upon insulators fixed to cross-arms aforesaid, separating the said wires by spaces of twelve inches.

"3. The defendants are also engaged in the telephone business in the state of Nebraska, but have not heretofore occupied the public road aforesaid at the point where the same passes through the village of Louisville as aforesaid, but are now proposing to occupy the same by the erection of poles equipped with cross-arms, and by the stringing of wires thereon for long distance and exchange service. The said defendants give out that they will, and threaten to and are now in the act of setting the said poles along the said public road, at the place where the same passes through the said village, in the line of plaintiff's poles and right of way, and threaten and are about to so set and erect their said poles so that they will extend above and through plaintiff's lead of wires, strung as aforesaid, and so that the said defendants' poles will be projected into and through the central 12-inch space between the wires of plaintiff's said lead. The defendants intend and threaten to place their wires on the poles of the said defendants, above plaintiff's lead of wires and in line therewith, and to so maintain them upon cross-arms fixed to the defendants' said poles, extending at right angles with and across plaintiff's lead of wires.

"4. Plaintiff has never given its consent to the erection of the poles, cross-arms and wires of the defendants, or any of them, in, upon or over the right of way aforesaid

774　　　　　 NEBRASKA REPORTS.　　　　[VOL. 68

Nebraska Telephone Co. v. Western Independent Long Distance Telephone Co.

of plaintiff, or in the line of plaintiff's poles, or within two and one-half feet from the said line on either side, or through or over plaintiff's lead of wires, but has expressly objected thereto; but the defendants, disregarding the plaintiff's objections and prior rights, are now proceeding to erect their poles, cross-arms and wires in the manner hereinbefore set forth, with the intent and for the purpose of injuring plaintiff, and interfering with its business and its prior rights.

"5. If the defendants erect and maintain their poles and wires as hereinbefore set forth, such erection and maintenance will immediately and greatly interfere with and injure plaintiff's business and the business of the plaintiff's patrons over said wires. The defendants' poles and plaintiff's wires will come into electrical contact, so that plaintiff's wires will be grounded, and thereby conversation over plaintiff's said wires will be interrupted and prevented, and defendants' wires will also, when loose or down, come into electrical contact with plaintiff's said wires, producing a like result, to great injury of the plaintiff, and for which injury plaintiff has no adequate remedy at law."

An answer was filed by the defendant the Western Independent Long Distance Telephone Company and its officers, admitting that their intention and purpose was to do the acts sought to be restrained; denying that it was done with the intent and for the purpose of injuring the plaintiff, and, in effect, that such acts would not interfere with the plaintiff's business. The answer also put in issue the right of the plaintiff to occupy the street referred to in the petition. The other defendants failed to answer, and, from the evidence, it would appear that they were in no way concerned in the acts sought to be restrained. The court found for the defendants and dismissed the complaint. The plaintiff brings the case here on appeal. In the further consideration of the case we shall refer to the parties by the title in the district court.

The first question that concerns us in this case is whether

the plaintiff rightfully occupied the streets in question with its poles and wires. In the consideration of this question, the court will take judicial notice that the village of Louisville is and for many years past has been a body politic, organized under the general laws of the state. The plaintiff does not base its claim to a right of way on the streets on any grant from the village, but solely on section 14 of chapter 89a, Compiled Statutes (Annotated Statutes 11463), which is as follows: "That any telegraph or telephone company incorporated or doing business in this state shall be and is hereby granted the right of way along any of the public roads of the state for the erection of poles and wires; *Provided,* That poles shall be set at least six feet within the boundary line of said roadway and not placed so as [to] interfere with road crossings; and *Provided,* That said wires shall be placed at the height of not less than twenty feet above all road crossings" (Session Laws, 1887, ch. 87).

It is insisted on behalf of the plaintiff that the term "public roads," in the section just quoted, includes the streets and alleys of a municipal corporation. A statute of the state of Minnesota (Laws Minn. 1860, ch. 12, sec. 1), worded very much like the one under consideration, was construed in *Abbott v. City of Duluth,* 104 Fed. 833, and the terms "public roads and highways" were held to include the streets and alleys of cities and villages, as well as rural highways. This construction was followed by the supreme court of that state, in *Northwestern Telephone Exchange Co. v. City of Minneapolis,* 81 Minn. 140, 86 N. W. 69, Start, C. J., dissenting, and *City of Duluth v. Duluth Telephone Co.,* 84 Minn. 486, 87 N. W. 1127. A similar statute was construed by the supreme court of Iowa (Code, 1873, sec. 1324) in *Chamberlain v. Iowa Telephone Co.,* 119 Ia. 619, 93 N. W. 596, in which it was held that the term "public highways" includes the streets of a city.

The cases just cited strongly support the theory of the plaintiff, but, after all, with this court, as with those whose opinions have been cited, the question is one of

776          NEBRASKA REPORTS.          [VOL. 68

Nebraska Telephone Co. v. Western Independent Long Distance Telephone Co.

legislative intent; that is, did the legislature use the term "public roads" in the most comprehensive sense, intending thereby to include the streets and alleys of municipal corporations, or did it use it in the more restricted sense, intending to include only rural highways?

Ordinarily, in construing a statute, words should be given their usual and recognized meaning. *State v. Byrum,* 60 Neb. 384; *State v. Weston,* 4 Neb. 216. It is only where such construction would be obviously repugnant to the intention of the lawmakers that a different construction is allowable.

Whatever may be the usage in other jurisdictions, we think it safe to say that in this state the term "public roads" is commonly understood and recognized to apply exclusively to rural highways. It is thus understood and used by the people of the state generally, and it is doubtful whether, in the ordinary affairs of life and common conversation, it is ever used or understood to convey the idea of a street or alley of a city or village. This is a matter of common knowledge, and of which this court must take judicial notice. There is nothing in the act itself, nor in the legislative history of the state, that suggests that the legislature used the term in any other sense than that in which it is commonly used by the people of the state. The statutes of the state were before the legislature when the act was passed. In those relating to cities and villages the term "public roads" never occurs, while in those relating to rural highways it is invariably used, save in some cases where the term "highway" is used as its equivalent. The statutes in force at that time vested county boards with the general supervision over "public roads" (Compiled Statutes, 1885, ch. 78, sec. 1), and municipal authorities with the control of their streets and alleys (Compiled Statutes, 1885, ch. 13, sec. 15, subdivision 24, and ch. 14, sec. 77). At that time cities, as an additional remedy against encroachments on their streets and alleys, had express authority to enact ordinances to prevent the use of such streets and alleys for telegraph and telephone poles

and wires (Compiled Statutes, 1885, ch. 13, sec. 15, subdivision 8, and ch. 14, sec. 39, subdivision 21). At the same session at which the act in question was passed, an act was passed for the incorporation of cities of the metropolitan class, and another for the incorporation of cities of the first class, conferring upon such cities the power to enact such ordinances (Session Laws, 1887, ch. 10, sec. 50, and ch. 11, sec. 68, subdivision 14), while the authority of cities of the second class in that behalf was left untouched. It seems to us that but one reasonable inference is to be drawn from the foregoing, and that is that the legislature had in mind the popular distinction between "public roads" and "streets and alleys," and used the former term in the act under consideration in the sense in which it is generally used and understood by the people of this state, and not in its generic sense as including the streets and alleys of municipal corporations; because it dealt with the latter in such a manner as to clearly indicate that it regarded them as something separate and distinct from the public roads of the state. Had it regarded a right of way for telegraph and telephone poles on the streets and alleys of municipal corporations of such transcendent importance to the public as to justify direct legislative action and to make it the subject of a legislative grant, it is not probable it would at the same time have clothed such municipalities with express authority to defeat the grant. It follows, therefore, that the plaintiff's occupancy of the street in question was without lawful authority.

But the plaintiff contends that the state, or the village, alone can successfully assail its right to the use of the street as a right of way. In support of this contention we are cited to *Williams v. Citizens R. Co.*, 130 Ind. 71, 29 N. E. 408. We do not consider that case in point. There the plaintiff was a street railway company and had organized for the purpose of constructing and operating an electric street railway, under a statute providing for the organization of street railway companies, and author-

izing them to employ any kind of motive power in common use, except steam. The question raised by the defendant was that by the use of electricity as a motive power the plaintiff was acting without the scope of its charter. Passing on the question thus raised, the court applied the rule that where there is an assumption of corporate rights and functions and an exercise thereof under color of law, only the state can question the validity of the assumption and the exercise of such functions and rights. That is only another way of stating the elementary rule, applicable to corporations generally, that where an association of persons is found in the exercise of corporate franchises, under color of legal organization, its existence as a corporation can not be inquired into in a collateral proceeding, and generally it can be inquired into only by the state whose sovereign powers have been usurped. That is not the question before us. The unauthorized obstruction of a public thoroughfare was a nuisance at common law, and is punishable as such under our statutes. Criminal Code, sec. 232. The case, then, is one in which the plaintiff invokes the extraordinary powers of a court of equity to protect it in maintaining a public nuisance, and in the doing of an act punishable under the laws of the state. We know of no instance wherein a court of equity has lent its aid to such ends. To do so would be contrary to those principles which have always guided such courts in the exercise of their powers.

It follows that the complaint was properly dismissed, and we therefore recommend that the decree of the district court be affirmed.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.