## WESTERN UNION TELEGRAPH CO. v. MEXICAN AGR. LAND CO.

### No. 981.   Opinion Filed March 12, 1912.

#### (122 Pac. 505.)

1.   **CORPORATIONS—Organization—Collateral Attack.**   In an action in damages brought by plaintiff as a domestic corporation, an answer averring, in effect, that plaintiff's organization was a pretended one in fraud of the laws of the state in that it was not organized for any purpose authorized by such laws, is not a collateral attack within the contemplation of Comp. Laws 1909, sec. 1256, but contains all that is essential to a plea of nul tiel corporation, and a demurrer thereto was improperly sustained.

2.   **SAME—Corporate Existence—Estoppel to Deny.**   A suit in damages by plaintiff as a domestic corporation against defendant as a common carrier of telegraphic messages for hire for failure to correctly transmit one message, and for failure to promptly deliver another.   **Held,** that defendant is not estopped to deny the corporate existence of plaintiff at the date of the contract.

(Syllabus by the Court.)

*Error from District Court, Cleveland County;*
*R. McMillan, Judge.*

Action by the Mexican Agricultural Land Company against the Western Union Telegraph Company.   Judgment for plaintiff, and defendant brings error.   Reversed and remanded.

*Shartel, Keaton & Wells,* for plaintiff in error.

*J. B. Dudley* and *John H. Mosier,* for defendant in error.

TURNER, C. J.   On March 26, 1907, Mexican Agricultural Land Company, defendant in error, sued Western Union Telegraph Company in the district court of Cleveland county.   After alleging itself to be a domestic corporation and defendant to be duly incorporated under the laws of New York and a common carrier of telegraphic messages for hire, in the first count plaintiff alleged, in substance:   That on September 11, 1906, one Morgan, plaintiff's secretary, delivered to defendant, at Norman, for transmission and delivery a telegram, which read:

"P. G. Manly, Mt. Carmel, Ill. Arrange attend directors' meeting Peoria next Friday morning without fail. R. J. Morgan"
—which defendant agreed to promptly and correctly transmit and deliver, in consideration of a fee, which he then paid. That said message when delivered to Manly read, "Arrange attend directors' meeting here next Friday morning without fail." That a meeting of plaintiff's board of directors had been called for Friday following the date of said message at Peoria, Ill., and, being a member of said board, it was necessary that said Manly be present. That said message was sent to notify him thereof, and to procure his attendance thereon, all of which was known to defendant at the time it received such message for transmission. That by reason of such error Manly went to Norman, arriving there Friday morning September 14th. That, had said message been correctly transmitted, he would have gone from Mt. Carmel, Ill., direct to Peoria. That other officers and directors of plaintiff were present at Peoria Friday morning to attend said directors' meeting, but, by reason of the absence of Manly, were unable to proceed, and were compelled to adjourn from day to day until he arrived, by reason of which plaintiff was compelled to and did pay Manly the sum of $25 a day and expenses from the time he left Mt. Carmel until his return thereto, and was compelled to and did pay its other officers and directors salary or per diem and expenses during the time said meeting was delayed, in all the sum of $316.58, an itemized statement of which was filed as an exhibit.

The second count substantially states: That on September 16, 1906, one Hayes, acting for plaintiff, delivered to defendant at Norman another message for transmission which read:

"J. H. Mosier, Great Northern Hotel, Chicago, Ill. Ramsey declines loan. Shall I come regardless? Answer quick. Hayes."

That said message was received by defendant at 3 o'clock a. m., whereupon defendant agreed to transmit the same correctly and without delay. That the same was negligently withheld without transmission until after 4 o'clock p. m., and was not delivered

to the addressee until 5:58 p. m. That R. G. Morgan, plaintiff's secretary, and J. H. Mosier, his counsel, were in Chicago on business of plaintiff waiting to hear from Hayes, and by reason of said delay both were compelled to remain there one day longer than they would have done had the message been promptly transmitted and delivered. That by reason thereof plaintiff was compelled to and did pay Morgan and Mosier $15 each for their time and expenses, or in all $42, an itemized statement of which is made an exhibit. The prayer was for judgment on the first count for $316.58 and interest and for $92, with interest on the second count.

The first paragraph of the answer denied that the plaintiff was a corporation *de jure* or *de facto,* and alleged that its pretended organization was in fraud of the incorporation laws of Oklahoma, in that it was not organized for any purpose authorized by such laws, but was pretended to be organized for purposes not authorized by the laws of Oklahoma, and without any intention, or expectation, on the part of the incorporators of conducting any business for which a corporation could legally be organized under such laws, and that such corporation had never conducted any business for the carrying on of which a corporation could be organized under the laws of Oklahoma. The answer is so verified as to put in issue allegations of the existence of the plaintiff corporation. Comp. Laws 1909, sec. 5648.

The court sustained a demurrer "to all that part of said count which sets up and alleges a want of legal corporate existence of the plaintiff company," to which defendant excepted and stood on his answer. There was trial to a jury and judgment for plaintiff, and defendant brings the case here. In sustaining the demurrer, the court, in effect, held that defendant had no right to attack plaintiff's corporate existence by reason of Comp. Laws 1909, sec. 1256, which reads:

"The due incorporation of any company, claiming in good faith to be a corporation under this chapter, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit to which such *de facto* corporation may be a party; but such inquiry may be had, and

action brought, at the suit of the state, in the manner prescribed in the Code of Civil Procedure."

But the court in so doing misconstrued the statute. If it is true as alleged in the answer, in effect, that there is no statute authorizing the organization of this corporation, then plaintiff is a pretended corporation, and in a suit by such corporation its right to exist may be questioned in this way, provided the answer states facts sufficient to constitute, in effect, a plea of *nul tiel* corporation. If plaintiff was not organized for a purpose authorized by law, there was no law in existence authorizing its organization, and it is operating in fraud of the law. And, there being no law authorizing it to exist as a *de jure* corporation, plaintiff is not even a *de facto* corporation, for the reason that a *de facto* corporation cannot exist where there is no law authorizing a *de jure* corporation. The statute simply means that the existence of a corporation while it is acting under its *de facto* organization cannot be assailed collaterally. Such is not here attempted. The contention is, in effect, that, as the answer alleges, and the demurrer thereto confesses, that no statute exists authorizing the organization of plaintiff, it follows that plaintiff is merely a pretended corporation, and not even a *de facto* corporation, but in legal effect a copartnership, and cannot bring suit as a corporation. We concur, and, as in *Johnson v. Hanover, etc.. National Bank, etc.,* 88 Ala. 271, 6 South. 909, the plea "that the Hanover National Bank of N. Y., a party plaintiff in this action, is not a corporation duly authorized by law to maintain this suit," was held to contain all that was essential to a plea of *nul tiel* corporation and cast on plaintiff the burden of proving its corporate existence, so we will hold that the allegations of this answer, in effect, that plaintiff's organization was a pretended one in fraud of the laws of the state, in that it was not organized for any purpose authorized by such laws, did not collaterally attack the existence of plaintiff operating as a *de facto* corporation within the contemplation of said statute, but contained all the essentials of such plea and that the court erred in sustaining a demurrer thereto. *Indiana Bond Company v. Ogle et al.,* 22 Ind. App. 593, 54

N. E. 407, 72 Am. St. Rep. 326, was a suit by the company wherein it averred itself to be the holder of certain street improvement bonds, and sought to enforce the statutory lien against appellee's real estate for an assessment for street improvement. Its corporate existence was challenged by answer in abatement in two paragraphs, wherein it was alleged that said company purported to be a corporation organized under and pursuant to the laws of Indiana and was assuming to act as a corporation, but that it was not an incorporated company and had no rights as such for certain reasons set forth, one of which appeared to be that it was organized to buy and sell bonds under a statute providing for the creation of corporations for the purpose of buying and selling merchandise and conducting mercantile operations. A demurrer to the several paragraphs being overruled, this was held on appeal to be no error. The court said:

"It is further argued that as appellant has assumed, under color of law and claim of right, to exercise corporate functions, the only method provided for questioning its right to use corporate franchise is by an information in the nature of a *quo warranto* filed under the provisions of section 1146, Burns 1894. It is true that the legality of the organization of a corporation cannot be collaterally questioned, but must be tested by an information; and that where there has been a good-faith effort to organize a corporation under the law, and corporate functions have been assumed and exercised, the organization becomes a corporation *de facto,* and, as a general rule, its existence cannot be inquired into collaterally. But the distinction must be kept in view between an attempted incorporation under a statute authorizing the creation of such corporation, and an attempted incorporation where no statute authorizes the creation of such a corporation. If there is a law authorizing incorporation, and a good-faith effort has been made to organize under such law, and the company has exercised corporate rights, it becomes a *de facto* corporation, and its *de jure* existence can be questioned only by the state. *North v. State ex rel.,* 107 Ind. 356 [8 N. E. 159]; *Hasselman v. United States Mtg. Co.,* 97 Ind. 365; *Williams v. Citizens' R. Co.,* 130 Ind. 71 [29 N. E. 408], 15 L. R. A. 64 [30 Am. St. Rep. 201]. In the above cases the corporate existence questioned was authorized by statute. But, if there is no statute authorizing the organization of a pretended corporation, in a suit by such pre-

tended corporation, its right to exist may be questioned by a plea of *nul tiel* corporation, which has been held to be a plea in abatement. A corporation *de facto* cannot exist in any case where there is no law authorizing a *de jure* corporation. And, where there is no grant of power existing for the creation of the corporation pretended to be organized, there can be no *de facto* corporation, and, in a suit by such pretended corporation upon a contract executed by it, the other party to the contract is not estopped to deny the corporate existence at the date of the contract. See *Heaston v. Cincinnati, etc., R. Co.,* 16 Ind. 275 [79 Am. Dec. 430] ; *Williams v. Franklin Tp., etc., Ass'n,* 26 Ind. 310 ; *Indianapolis, etc., Co. v. Herkimer,* 46 Ind. 142 ; *Mullen v. Beach Grove, etc.,* 64 Ind. 202 ; *Piper v. Rhodes,* 30 Ind. 309 ; *Brown v. Killian,* 11 Ind. 449 ; *Harriman v. Southam,* 16 Ind. 190 ; 1 Thompson Corp., secs. 505, 523."

See, also, *Pape v. Capitol Bank,* 20 Kan. 440, 27 Am. Rep. 183 ; *Empire Mills v. Alston Gro. Co.,* 4 Willson Civ. Cas. Ct. App. (Tex.) sec. 221, 15 S. W. 505, 12 L. R. A. 366 ; *Blackburn v. Oklahoma City,* 1 Okla. 292, 31 Pac. 782, 33 Pac. 708 ; *City of Guthrie v. Wylie,* 6 Okla. 62, 55 Pac. 103.

As this settles all the assignments of error necessary to discuss, the cause is reversed and remanded for a new trial.

DUNN, HAYES, and KANE, JJ., concur; WILLIAMS, J., absent, and not participating.