THE CITY OF TOPEKA v. THE TOPEKA WATER COMPANY.

No. 10762.

| 58 | 349 |
| 63 | 318 |

| 58 | 349 |
| 80 | 57 |

1. FORFEITURE OF CORPORATE FRANCHISES — *ordinarily adjudged only where no other adequate remedy.* Courts are extremely reluctant to adjudge forfeitures of corporate privileges and franchises; and being vested with some discretion in proceedings brought for that purpose, will ordinarily do so only where no other adequate remedy is available.

2. ———— *and mandamus is adequate remedy to compel a water company to extend mains under contract with city.* Mandamus may be employed to compel a water company to extend its

mains in a city, where under the contract between the city and the company it is the duty of the company to make such extension.

Error from Shawnee District Court. Hon. William Thomson, Judge *pro tem.* Opinion filed June 5, 1897. *Affirmed.*

*W. A. S. Bird*, City Attorney, for plaintiff in error ; *S. B. Isenhart*, of counsel.

*A. L. Williams*, *N. H. Loomis* and *R. W. Blair*, for defendant in error.

JOHNSTON, J. This is an action by the City of Topeka to forfeit the franchise and privileges granted by the City to the Topeka Water Supply Company in 1881, and which were assigned and transferred to the defendant, the Topeka Water Company, in 1891.

An ordinance was enacted which granted the Company the right and privilege of constructing waterworks, and maintaining the same for a period of twenty years. Authority was given to use the public streets, alleys and grounds of the City, as might be necessary for the distribution of the water. It was provided that the main and distributing pipes should be not less than fifteen miles in length, and that the works should be "constructed of not less than three million gallons capacity, fire pressure, in twenty-four hours." The City agreed to rent one hundred and fifty hydrants, to be located along the fifteen miles of water mains, at an annual rental of seven thousand dollars ; and there was a further provision that the City could require the erection of one hundred and fifty additional hydrants on the fifteen miles of mains, at an annual rental of fifty dollars each ; and for every mile of future extensions the Company was required to erect ten hydrants, for which the City was to pay the sum of five hundred dol-

lars per annum. It was ordained that the City might require the Company to extend its mains along any graded street, and also to lay mains on streets which were not on grade; but when the streets were finally brought to grade the expense of relaying the mains and pipes was to be paid by the City. The Company was required to furnish good, clear, healthful and wholesome water, at a schedule of rates which was prescribed in the ordinance. The City was entitled to water for washing and flushing the gutters and sewers, free of charge, and also to water for the use of the fire department, city building and offices, the public schools of the City, and at certain designated watering-fountains. The test of the capacity of the works was, that they should "discharge ten one-inch streams at the same time from any ten hydrants on the distribution pipes, with fifty feet of hose attached, to the height of one hundred feet, or maintain its equivalent pressure at the nozzle or hydrants." The ordinance prescribed the grounds upon which the franchise might be forfeited, in the following language :

"Upon any failure on the part of said Company to comply with any of the provisions of this ordinance, either as to the amount of water or the quality of the same, or any failure to furnish sufficient supply of water at all times, excepting in cases of unavoidable accident, said Company shall forfeit its franchises and its charter shall be null and void."

The works were erected, and, after being tested, were accepted by the City, and have been in operation since 1881.

In its petition, the plaintiff charged that the water was impure and that the works were not up to the required standard. It was also alleged that the City had repeatedly made demands upon the Company to extend its mains and pipes into certain additions and

portions of the City not supplied by the fifteen miles of mains already constructed, but that the Company had refused to do so. The alleged grounds of the impurity of the water and of the insufficiency of the strength of the waterworks, were abandoned; and no testimony was introduced on the trial with reference to the quality of the water or the strength of the works. The question submitted to the trial court was, whether, under the ordinance, the Company had forfeited its rights by refusing to extend its mains as demanded by the City. The court found in favor of the Company, and refused to adjudge a forfeiture.

It will be seen that nothing remained in contest but an interpretation of the provision of the contract relating to extensions. The claim was made by the City, and denied by the Company, that the City might at its option require the laying of additional mains over any of the unoccupied streets. Because of this dispute and refusal, the City asks an absolute annulment of the contract and a forfeiture of all the franchises and privileges under which the Company is operating. Under the contract, a large and expensive plant has been constructed, which has been in operation for about sixteen years. There are in the contract many important stipulations, other than the one in controversy, which have not been mentioned, and out of which large and valuable property rights have grown. It appears that a *bona fide* dispute has arisen over the interpretation of a single provision; but should it be settled in a proceeding for an absolute forfeiture? and should the denial of the claim of the City in one particular be visited by the extreme penalty of civil death?

The controverted question is an important one to the City and its inhabitants; and if the interpretation placed upon it by the City be the correct one, it is en-

titled to a prompt and effectual remedy. The law, however, does not look with favor on forfeitures, and it would appear that another remedy exists in which an interpretation of the contract may be obtained and complete redress awarded. Doubtless there are cases where the City may · properly ask a forfeiture, and where an annullment of the contract is the only adequate remedy. *Waterworks Co. v. City of Burlington*, 43 Kan. 725; *City of Winfield v. Water Co.*, 51 id. 70. It is insisted that this remedy should be allowed here because a forfeiture is provided for in the contract itself. In the section of the ordinance relating to forfeitures, the failure to make future extensions of the mains and pipes was not made a ground of forfeiture. The failure to furnish the quality of water prescribed or to furnish the quantity and force named in the ordinance, excepting in cases of unavoidable accidents, are made grounds of forfeiture; but no other reasons are mentioned, and probably an anulment of the contract upon other grounds was not within the contemplation of the contracting parties.

*1. Forfeiture of corporate franchise not adjudged, when.*

It will be observed that this proceeding is not brought by the State, and that neither the validity of the organization of the Company nor its right of existence is in question. The State is not asking to reclaim the franchises bestowed by it upon the Company, but the City seeks an annulment of the contract because of the non-performance of a condition subsequent; and the failure to perform this condition is not made a ground of forfeiture. If, however, the Company failed to carry out the purposes of its organization, and willfully violated the provisions of the ordinance other than those specified as grounds of forfeiture, an annulment might in some instances be had; but, as has been before observed, a forfeiture is

23—58 KAN.

always abhorred, and, according to repeated decisions of this court, it will ordinarily not be declared where there is another adequate remedy. *The State, ex rel., v. Wilson,* 30 Kan. 661; *Tarbox v. Sughrue,* 36 id. 225; *Weston v. Lane,* 40 id. 479. See, also, 5 Thompson on Corporations, § 6608; High on Extraordinary Legal Remedies (3d ed.), § 649; 4 Am. & Eng. Encyc. of Law, 293, and cases cited.

As determined in the cited cases, the court is vested with some discretion in such a proceeding; and, since it is slow to adjudge the extreme penalty where the law has provided other sufficient remedies, the question arises — Is mandamus a suitable and sufficient remedy? It has already been determined

2. Mandamus adequate remedy, when.

that a corporation organized to promote public works, and which has been granted a franchise by a city through an ordinance, may be compelled to perform its duties toward the public by a proceeding in mandamus. *City of Potwin Place v. Topeka Rly. Co.,* 51 Kan. 609. In such an action, the dispute as to the interpretation of the contract may be settled and the whole controversy in this case determined.

It is stated in behalf of the Company that, if it is held by the court that the interpretation contended for by the City is correct, the Company will abide the result and at once construct the additional mains and pipes. We will not undertake in this proceeding to determine the rights of the parties under their contract; but, holding that mandamus is an available and adequate remedy for the determination of the controversy, the judgment of the District Court will be affirmed.