COVERDALE ET AL. *v.* EDWARDS.

[No. 18,836. Filed October 30, 1900.]

APPEAL AND ERROR.—*Harmless Error.*—In an action against a city marshal and others for damages for removing electric light poles and wires belonging to plaintiff, the alleged error of the court in sustaining a demurrer to defendants' answer in justification is not available to appellants where they admitted in their brief that the court permitted all evidence to be admitted under the general denial which would have been admissible under the answer in justification. *pp. 375, 376.*

LICENSES.—*Electric Light Companies.*—*Municipal Corporations.*—A grant to an electric light company to plant and erect poles in the streets of a city for the purpose of furnishing electric lights to the citizens of such city, reserving the right on the part of the city to revoke the grant, and demand that the poles be removed, and remove the same if necessary, constituted a bare license, revocable without cause at the will of the city council. *pp. 380, 381.*

SAME. — *Electric Light Companies.* — *Municipal Corporations.* — The provision of §4303 Burns 1894, authorizing cities to grant by resolution or ordinance, under such restrictions as the common council may deem proper, to any person or corporation, the right to maintain in the streets, alleys, and other public places in such city, poles, wires, and other necessary appliances for the purpose of supplying electric or other light, carries with it the right to impose any terms on the grant not forbidden by law, and the discretion of the common council is not confined to the mere restriction of methods of use, but extends to restriction of time. *pp. 380, 381.*

MUNICIPAL CORPORATIONS.—*Resolutions.*—*Preamble.*—The preamble of a resolution may be looked to in aid of the interpretation of an ambiguity in the resolution, but, if the terms of the resolution are clear, the preamble cannot be allowed to cast a doubt upon the meaning. *p. 382.*

Coverdale *v.* Edwards.

MUNICIPAL CORPORATIONS.—*Resolutions.—Motives of Council.*—In an action against city officers for damages for removing plaintiff's electric light poles and wires from the streets, the motives or influences that led the councilmen to pass the resolution ordering such removal were irrelevant where the subject-matter was within the scope of their authority. *p. 382.*

SAME. — *Licenses. — Cancelation. — Removal of Electric Light Poles from Street.*—Where, by the terms of a grant to an electric light company to occupy the streets of a city, the common council thereof had authority to terminate the license at will, the failure of the company to remove its poles on receiving legal notice from the council so to do, rendered them a nuisance *per se,* and the city had the right to remove them summarily. *pp. 382, 383.*

APPEAL AND ERROR.—*Joint Assignment.*—Where on appeal from a judgment against certain city officers for damages for removing electric light poles from the streets of the city the evidence established the defense of justification on the part of some of the defendants only, the judgment will not be reversed for such reason on a joint motion on the part of all of the defendants for a new trial. *p. 383.*

JUDGMENTS.—*Excessive Damages.*—A judgment against the city marshal and members of the common council for damages in the sum of $4,000 in favor of an electric light company for the removal of its poles and wires from the street, was excessive, where the city had the right to remove the poles, since the measure of damages was the difference in value between the poles and wires properly removed and as they were actually removed. *pp. 383, 384.*

From the Allen Circuit Court. *Reversed.*

*Mann & Beatty, J. T. France and O. N. Cranor,* for appellants.

*Peterson & Peterson, H. F. Colerick, C. J. Lutz, R. K. Erwin* and *P. G. Hooper,* for appellee.

BAKER, C. J.—This action was begun in the Adams Circuit Court. The venue was changed to Wells and thence to Allen. Appellee's complaint charged that appellants, in pursuance of a conspiracy to injure appellee, maliciously cut down certain poles and electric wires belonging to appellee and lawfully maintained by him in the streets of the city of Decatur, Indiana, thereby destroying his property and business, to his damage in the sum of $15,000. Appellants filed answers in general denial and in justification. Appellee's demurrer was sustained to the answers in justifi-

cation.    The trial resulted in a general verdict and judg-
ment in favor of appellee for $4,000.    Appellants' joint
motion for a new trial was overruled.    The joint motion
of two appellants, the city attorney of Decatur and his law
partner, for a new trial was overruled.    Errors are as-
signed on each adverse ruling.

Inasmuch as the appellants admit in their brief that the
court allowed them under their general denial to introduce
all the evidence that would have been admissible under their
answers in justification, the error, if any, committed in sus-
taining the demurrer is not available to appellants.

The principal contentions are that the verdict is not sus-
tained by the evidence and is contrary to law and that the
damages are excessive.

Of the thirteen appellants, five were councilmen of the
city of Decatur, one was the city attorney, one was the city
attorney's law partner who joined in advising the council,
one was the city marshal, and five were persons employed
by the marshal to assist him in executing the commands of
the council.    In 1889 the council adopted the following
resolution:    "Resolved that the Thompson & Houston Elec-
tric Light Company be and are hereby given and granted
permission to plant and erect poles in the streets and alleys
of Decatur for the purpose of stringing wires thereon to
furnish electric lights to the citizens of said city.    The
planting of such poles shall be made under the direction of
the street commissioner of said city and he shall see that
the same are not erected so as to inconvenience said citizens.
The said council hereby reserve the right to revoke this
grant, and demand that the poles be removed, and remove the
same if necessary."    The Thompson & Houston Company
erected certain poles and wires, and afterwards conveyed
the property to appellee and assigned to him the rights
under the foregoing resolution.    The city did not formally
consent to the assignment; but in 1893 the city entered into
a contract with appellee whereby appellee was engaged to

Coverdale *v.* Edwards.

supply the city with a certain number of street lights for three years at so much per light per year. After the expiration of this contract, the city decided to put in an electric light system for itself. On August 18, 1897, the council adopted the following resolution: "Whereas the common council of the city of Decatur, Indiana, on the 10th day of February, 1893, entered into contract with one J. D. Edwards whereby said Edwards agreed to supply the city of Decatur with a certain number of street lights for the term of three years at a certain price per light per annum, which contract is spread of record in the records of proceedings of the common council of the said city of date of February 21, 1893; and whereas the contract under which the said Edwards furnished the said city with electric lights expired on the 10th day of February, 1896, and has not been renewed, but was by resolution of the said common council discontinued on the 13th day of July, 1897; and whereas under the said contract the said Edwards erected a number of poles in the streets, alleys and public grounds of the said city, and strung wires and lamps thereon for the purpose of supplying the said electric lights to said city for street purposes, which poles, wires and lamps are now not being used and are in the way of others which the said city proposes to erect for the construction of an electric light plant to be owned and controlled by the said city; therefore be it resolved that the city marshal be and he is hereby directed to notify the said J. D. Edwards to take down and remove all his poles from the streets and alleys and public grounds of the said city within fifteen days from the date of the receipt of the notice or the same will be removed by said marshal under and by order of the common council; and be it further resolved that, should the said Edwards fail or refuse to remove or cause to be removed all such poles, wires and lamps from the said streets, alleys and public grounds within the time mentioned in the said notice, the said marshal shall procure sufficient help and remove the

said poles, wires and lamps immediately thereafter." On August 19, 1897, the marshal served upon appellee the following notice. "To J. D. Edwards: You are hereby notified that the common council passed a resolution at their meeting held August 18, 1897, ordering the removal of all your poles, wires and electric lamps from the streets, alleys and public grounds of the city of Decatur, Indiana, within fifteen days from the date of the receipt of this notice by you. You are therefore hereby notified to remove or cause to be removed all the electric light poles, wires and lamps now erected and maintained by you in any of the streets, alleys or public grounds in said city within fifteen days from this date, or I will, under orders of the said council, cause the same to be taken down and removed far enough that they will not interfere with the erection of new poles, wires and lamps to be erected by said city. Dated this 19th day of August, 1897. M. F. Cowan, city marshal." At the time of passing the resolution of August 18, 1897, the members of the common council did not know of or did not remember the grant of 1889. Appellee removed some of the poles and wires that had been used in lighting the streets, but left standing others of that line and all of the line used in supplying lights to individuals. By September 28, 1897, the construction of the city's line had reached the places where appellee's poles and wires were left standing. The marshal had not yet executed the order contained in the resolution of August 18th. At their regular meeting on the evening of September 28th, the common council, in executive session, passed the following resolution: "Whereas, on the 18th day of August, 1897, the common council of the city of Decatur, Indiana, ordered the removal of the electric light poles, lamps and wires of J. D. Edwards from the streets, alleys and public grounds of said city within fifteen days from the date of the receipt of notice by him; and whereas, in accordance with the resolution then adopted, the marshal of said city noti-

fied the said Edwards on the 19th of August, 1897, to take down and remove within fifteen days all such poles, wires and lamps from the streets, alleys and public grounds of said city; and whereas the said Edwards has only partially complied with the requirements of said resolution and has left standing on Main or Second street, between Jefferson and Jackson streets, all his poles, lamps and wires the same as before the adoption of said resolution and service of such notice; and whereas it is imperative that the city of Decatur shall have the immediate use of Second street from Jefferson street to Jackson street on both sides thereof; therefore be it resolved that the city marshal be and he is hereby ordered to employ sufficient force of men to immediately remove from said Second street between Jefferson street and Jackson street all poles, wires and lamps belonging to said J. D. Edwards by removing the wires and lamps and cutting down the poles, doing as little damage to the poles, wires and lamps as under the circumstances is practicable." After the adjournment of the meeting, some of the members of the common council directed the marshal to remove appellee's poles and wires that night. One of the attorneys notified a workman that the marshal would need his services. About two o'clock that night the marshal and his assistants cut the wires and sawed off the poles from six inches to two feet above the ground. The consequence was that appellee was unable longer to conduct his business. The marshal and those who assisted him in removing the poles and wires acted solely in obedience to the orders of the council, and not at all from any intention or willingness to injure appellee. The foregoing facts are shown by the evidence without conflict.

The objections to the evidence and the disputes as to the facts arose mainly with reference to the motives of the councilmen and the amount and elements of damages.

The councilmen claimed that, in deciding that the city should own a plant for itself, and in passing the resolutions

hereinabove set forth, they in good faith exercised only their best judgment as councilmen in the city's interests. They claimed that, in ordering the removal of the poles and wires during the night of September 28th, they were influenced only by the considerations that the city needed the immediate use of the streets, that the removal at night would avoid interference with traffic and possible accidents to onlookers and breaches of the peace, and that further postponement might result in the city's becoming involved in a suit by appellee to restrain any removal. On the other hand, there was evidence from which a jury might infer that some of the appellants who were councilmen were actuated by a malicious intention to injure appellee.

The court, in the admission of evidence and in the instructions to the jury, submitted the question of damages on these elements: the destruction of appellee's business; the loss of the power-house, erected on leased ground and forfeited under a condition by which appellee's rights should continue only so long as he conducted his electric light business; and the difference in value between the poles, wires and lamps when standing ready for use and when torn down. Appellee had been making $100 a month, net, from the operation of his plant. The highest valuation on the power-house was $500. The highest valuation on the poles, wires and lamps when standing ready for use was $511. The lowest valuation on the poles, wires and lamps when torn down was naught.

The first question concerns appellee's rights in the streets at the time of the alleged trespass. The control of streets, as well as of all other public highways, is primarily in the legislature. But the legislature has delegated to municipalities the exclusive control of their streets and alleys. §3623 Burns 1894, §3161 R. S. 1881 and Horner 1897. As the legislature gave, so that body may take away or modify, the power. There is no doubt of the legislature's authority to grant to individuals and corporations the right to erect

poles and wires upon the streets of a municipality without its consent or over its objection. *Town of New Castle v. Lake Erie, etc., R. Co., ante,* 18, and cases there cited. But the legislature, far from granting such a right, has expressly committed this subject to the discretion of the municipality. Section 4303 Burns 1894, §3106c Horner 1897, provides that any city is hereby authorized to grant by resolution or ordinance, under such restrictions as the common council may deem proper, to any person or corporation, the right to erect and maintain, in the streets, alleys and other public places of such city, posts, poles, wires, and other necessary appliances, for the purpose of supplying electric or other light. The grant to the Thompson & Houston Company was made under this statute. It was a personal license, not assignable without the consent of the city. But the contract of 1893 ratified the assignment and made the license irrevocable during the life of the contract. At the expiration of the contract, appellee stood as the lawful assignee of the Thompson & Houston Company's license. That license contained this provision: "The said council hereby reserve the right to revoke this grant, and demand that the poles be removed, and remove the same if necessary." The language is clear and the meaning unmistakable. The grant was a bare license, revocable without cause at the will of the council. If the licensee, at the revocation of the grant, should not remove the poles on demand, the council might cause their removal. Appellee claims that, under §4303, above, the council may restrict the method of use but may not limit the time. The legislature confided an unreserved discretion to the council. The unqualified right to grant or refuse at discretion carries with it the right to impose any terms on the grant not forbidden by law. The discretion of the council is not confined by the law to the mere restriction of methods of use, and therefore extends to restriction of time. *City of Indianapolis v. Navin,* 151 Ind. 139, 143, 41 L. R. A. 337; *Citizens St. R. Co. v. City R. Co.,* 64 Fed. 647, 656.

Appellee next contends that, even if the council had the right to terminate the license as a whole, the resolution of August 18th and the notice of August 19th, were not effective to end appellee's right to maintain his commercial plant. The argument · is based on recitals in the preamble. The preamble is no part of the resolution. A preamble may be looked to in aid of the interpretation of an ambiguity in a resolution. But if the terms of a resolution are clear, a preamble can not be allowed to cast a doubt upon the meaning. 23 Am. & Eng. Ency. of Law 329-331. Here, the resolution in explicit terms ordered appellee to remove all his poles that were maintained in the streets and alleys of Decatur; and the notice followed the resolution. But if outside matters were to be taken into consideration in determining the meaning of the resolution, the fact that the council on August 18th had forgotten or did not know of the Thompson & Houston Company's license would indicate that they supposed that appellee had no license except the one which was implied by the contract of 1893 and which became a bare license revocable at will in 1896. Under this view, the preamble, like the body of the resolution, was aimed at appellee's entire system.

Appellants, in their relations to the resolutions and acts thereunder, are naturally divisible into three groups: the councilmen, the marshal and those who assisted him in the removal of the poles, and the attorneys of the city.

The motives or influences that led the councilmen to pass the resolutions were irrelevant, if the subject-matter was within the scope of their authority. Throop, Public Officers, §709; Mechem, Public Officers, §§644-646; *Buell* v. *Ball,* 20 Iowa 282; *Freeport* v. *Marks,* 59 Pa. St. 253. What poles and wires should be permitted in the streets was a question in relation to which the councilmen owed a duty to the public, and not at all to individuals. If an individual was affected, it was immaterial unless a contract

was violated. The nature of appellee's contract-right in the streets has already been considered. The council had authority to terminate the license at will. The remaining question is in regard to the steps the city might lawfully take in effecting the removal of the poles and wires. There is no doubt of the right of the city to begin legal proceedings to that end (*American Furniture Co.* v. *Town of Batesville,* 139 Ind. 77); and appellee claims that this was the only way. Is that true? If appellee had erected the poles in the streets without any lawful authority to do so, the poles would have constituted a public nuisance *per se.* *City of Valparaiso* v. *Bozarth,* 153 Ind. 536, 45 L. R. A. 487, and cases cited. If the poles were erected under lawful authority, and if the authority was legally canceled, appellee's failure or refusal to remove the poles after notice would render them a nuisance *per se,* and the city's right would then be complete to remove them summarily. *City of Indianapolis* v. *Miller,* 27 Ind. 394; *Baumgartner* v. *Hasty,* 100 Ind. 575, 50 Am. Rep. 830; *American Rapid Tel. Co.* v. *Hess,* 125 N. Y. 641, 13 L. R. A. 454; *Note to Orlando* v. *Pragg,* 34 Fla. 244, 19 L. R. A. 196; *Note to City of Evansville* v. *Miller,* 146 Ind. 613, 38 L. R. A. 161. So it appears that in respect to both the termination of appellee's license and the method of effecting the removal of the poles the subject-matter of the resolutions was within the scope of the authority of the councilmen. As the evidence fails to show that they advised or assisted in any abuse of the order of removal, the record establishes their defense of justification. But their motion for a new trial cannot be sustained on the ground that the verdict is contrary to law, unless there is no liability on the part of the marshal and his assistants, for their motion is joint with that of the marshal.

The marshal and his assistants are liable for any abuse of the order of removal. Throop, Public Officers, §724; Mecham, Public Officers, §664. On the question whether

the marshal caused more than unavoidable injury in removing the poles and wires, the evidence is conflicting, and therefore the verdict can not be disturbed on that account. But the damages awarded are clearly excessive. The unfortunate destruction of his business fell upon appellee as the proximate result, not of the marshal's abuse of the order of removal, but of the termination of his license and the order of removal properly executed. The loss of his power-house was due to the terms of appellee's lease, and was not legally attributable to the marshal's acts. Even with respect to the poles and wires, the question of damages was not properly submitted to the jury. The measure is the difference in value between the poles and wires properly removed and as they were actually removed. All of the appellants are entitled to a new trial on the ground that the damages are excessive.

As the city's attorneys correctly advised the council in respect to the scope of the city's authority, no question arises as to the circumstances under which, and the persons to whom, the attorneys would be liable for wrong advice. The evidence fails to show that they counseled or assisted in any abuse of the order of removal. Their joint motion for a new trial, separate from that of all the appellants jointly, should have been sustained on the ground that the verdict is contrary to law.

Justification is a defense that must be affirmatively pleaded. On the trial now in review, appellants were not injured by the ruling on the demurrer, because they admit that they were permitted to introduce all their evidence under the general denial. But on a new trial, appellants should have a legal basis for the introduction of their evidence.

Judgment reversed, with directions to overrule the demurrer to the affirmative answers.