## WAKEFIELD et al. v. VILLAGE OF THERESA.

(Supreme Court, Appellate Division, Fourth Department. March 4, 1908.)

1. MUNICIPAL CORPORATIONS—USE OF STREETS—GRANT OF PRIVILEGES—ELECTRIC LIGHTING.

A contract whereby a village grants to an individual the privilege of using the streets in connection with the operation of an electric lighting plant for lighting the streets and furnishing light to the inhabitants is within the powers conferred on villages by the Village Laws of New York (Becker & Howe [3d Ed.] § 240, p. 206), Laws 1888, p. 743, c. 452, and Laws 1891, p. 310, c. 139.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1459.]

2. SAME.

The transportation law, authorizing municipalities to maintain municipal lighting plants, does not repeal Laws 1888, p. 743, c. 452, and Laws 1891, p. 310, c. 139, authorizing villages to grant franchises for operating lighting plants.

3. SAME—REVOCATION OF GRANT.

A grant by a municipality to an individual of a privilege to use its streets in connection with the operation of a lighting plant erected in reliance upon the grant is a valuable property right, of which he cannot be deprived, unless there has been a forfeiture on his part, or unless the plant has become a nuisance.

4. SAME—TERMINATION OF GRANT.

Where a contract between a village and individual, granting to him the privilege of using the streets in connection with the operation of a lighting plant, contemplated the extension of the franchise beyond the period specified in the contract, unless the village elected to purchase the appliances, and the contractor and his successors continued to use the franchise from year to year and improved the plant, all of which was done with the acquiescence of the village authorities, but without a formal renewal of the contract, as therein provided, the village could not make the omission to renew the contract a ground for impeaching its validity, or claim that the contractor's successors were in the streets unlawfully.

5. SAME.

A municipality authorized to maintain a municipal lighting plant is not entitled to remove appliances erected by the owners of a valid franchise, unless there has been a substantial violation of the agreement granting the franchise.

Appeal from Special Term, Jefferson County.

Action by James W. Wakefield and another against the village of Theresa. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

William D. Morrow and John N. Carlisle, for appellant.
W. B. Van Allen, for respondents.

SPRING, J.　The village of Theresa is an incorporated village containing about 1,000 inhabitants.　In April, 1905, by its president and trustees, it entered into a written agreement with one A. J. Reynolds whereby it granted to him the privilege of using the streets of said village to erect poles, string wires, and construct and operate an electric lighting plant.　The method of exercising the privilege was specified in the agreement, particularly the kind of poles to be used, and their location in the streets of the village in order to prevent interference with their ordinary use or with the enjoyment of the premises of the owners of lands abutting on the streets.　It contained these provisions:

"The party of the second part (the said Reynolds) is to put in, keep in repair and operate for the purpose of lighting said village and citizens at any point within the line of his appliances, where the said village shall direct, for the term of one year, three five hundred candle power incandescent lights free of charge and is to furnish such lights as the said party of the first part (the appellant) shall deem necessary for the purpose of lighting said village and any of the citizens thereof at all times when the said party of the first part shall desire or request the same, and shall receive therefor a compensation from said party of the first part of a sum not to exceed the amount paid by any other village within this state of a like population, and using a like number of lights.　*　*　*　The said party of the second part is to have the said franchise for the term of five years from the date hereof, with the option at the expiration of said five years of continuing the same at the compensation paid for a like service in any other villages or manufacturing establishments for like service where there is no competition or if said village should terminate the said franchise at the expiration of said five years for any other cause than for a failure of second party to fulfill all or any of the stipulations or agreements herein contained then they are to purchase the said electrical appliances of said second party, then in active operation and pay him a fair and reasonable compensation therefor.　Said party of the first part is to grant no other franchise or privilege for electric lighting during the said term except this be terminated for reasons stated above or by operation of law."

Pursuant to the agreement Reynolds erected his plant, and continued its operation until October, 1895, when he leased it to Stockwell and Parker, who carried on the business for about seven years.　There were times when the service was unsatisfactory.　The three lights of 500-candle power each were never furnished, and there was only one light of 32-candle power for street purposes.　The light was intermittent, and occasionally the plant would not be operated at all.　In March, 1903, the plaintiff Santway acquired the property, and has since operated it with his coplaintiff.　In that year he improved it, erecting new poles, stringing new wires, and otherwise adding to its efficiency; all of which was done with the knowledge and acquiescence of the village trustees, and the street commissioner of the village performed the greater part of the work in connection with these improvements.　Since that time the service has been very largely improved.　In 1900, when the five-year period expired, there was no renewal of the agreement.　There was, however, no demand for a suspension of the business, which has ever since been carried on without regard to any new agreement or ex-

tension of the old one. In 1906 the village obtained from the State
Commission of Gas and Electricity a certificate authorizing the build-
ing and maintenance of an electric lighting plant by the village of
Theresa, and a municipal system is now being installed. In anticipation
of this project a resolution was adopted by the village board of trustees
in February, 1906, and a copy was promptly served upon the plaintiffs,
requiring them to remove from the streets all their "wires, poles, elec-
tric appliances or apparatus" within 30 days from the service of the
notice. The resolution further provided:

> "If said poles, wires and appliances are not so removed by them or caused
> to be removed by them within such time above designated, it is the intention
> of the village board of trustees to cause the same to be done and such poles,
> wires and appliances to be removed from the streets and highways of the
> village of Theresa, N. Y., and if necessary to resort to any legal remedy as
> they may be advised to carry this resolution into full force and effect."

This action was commenced to restrain the defendant or its officers
from carrying out the purpose expressed in the resolution, and, as a re-
sult of the trial, a permanent injunction has been granted.

The original agreement, in so far as it authorized Reynolds to install
and operate an electric lighting plant for lighting the streets of the vil-
lage, was valid. The trustees possessed the power to make such a con-
tract with either a corporation or an individual. Chapter 139, p. 310,
Laws 1891; chapter 452, p. 743, Laws 1888; Village Laws of New
York (Becker & Howe [3d Ed.] § 240, p. 206). The agreement was
made before the transportation law took effect, and that act did not in
any event repeal any of the acts referred to. The power of the mu-
nicipal authorities is to contract for lighting the streets and public
grounds of the village. Subsidiary to that purpose is the furnishing of
light to the inhabitants of the village, and this ordinarily becomes the
chief support of the business, as it has been in this case. The provi-
sion for lighting the streets was very meager, and even that has not
been complied with. During the 12 years the plant has been in opera-
tion, there does not seem to have been any demand to give adequate light
in the streets or to furnish the three lights provided for in the agree-
ment. In reliance upon the contract the plaintiffs and their predeces-
sors in interest expended money in erecting, extending, and operating
the plant, and the privilege granted to use the streets became a valuable
property right, of which the owners cannot be deprived, unless there
has been a forfeiture on their part, or unless the plant has become a
nuisance. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A.
255, 7 Am. St. Rep. 684; Roddy v. Brooklyn City & Newtown R. R.
Co., 32 App. Div. 311, 314, 52 N. Y. Supp. 1025; Ingersoll v. Nassau
Electric R. R. Co., 157 N. Y. 453, 463, 52 N. E. 545, 43 L. R. A. 236;
Boyer v. Village of Little Falls, 5 App. Div. 1, 7, 38 N. Y. Supp. 1114.
It is claimed that the privilege expired in 1900 by the terms of the con-
tract. The plaintiffs did not become vested with the title to the plant
until 1903, and it was then in operation with the acquiescence of the
defendant. They equipped the plant, adding to it materially, and the
claim was not then made that a renewal of the contract was essential
to give validity to the privilege of keeping the poles and wires in the
streets. The contract contemplated the extension of the franchise be-

yond the five-year period, unless the municipality elected to purchase the appliances. In a rather loose way, and yet with the approval of all parties, the plaintiffs have continued to avail themselves of their franchise from year to year without any formal renewal. Consequently, it is too late now for the defendant to make the omission to renew the agreement a ground for impeaching its validity, or to claim that the plaintiffs are in the streets unlawfully.

Considerable evidence was introduced bearing upon the question of the operation of the plant. The defendant claimed there had been substantial violations of the agreement, and the plaintiffs presented proof tending to show either that there were no alleged infractions, or that they were unimportant, or that they had been assented to. These facts were settled by the court below in favor of the plaintiffs, and, as a result, this finding was made:

"That there has not been such want of care nor such failure to render efficient service, as to constitute said poles, wires, and system a nuisance or so as to operate as a forfeiture of said franchise."

The judgment following the directions of the findings amply protects the defendant by this clause:

"The defendant may apply for modification of this injunction upon failure of plaintiffs to operate their said plant, and may thereupon urge a forfeiture of the franchise, if facts, since the trial, have arisen or hereafter shall arise, whereby the streets or public places of the village, or any of its inhabitants or their property, shall be exposed to danger of injury."

The real animus of the attempt to remove the plaintiffs' plant apparently is to get rid of a competitor to the new municipal lighting system. It may be desirable for the new plant to have all the business of the village, yet the plaintiffs are in the streets by warrant of the village authorities, and have been many years operating their plant. The intention of the defendant to destroy their property unless removed within 30 days in order to be justified must be founded upon a manifest disregard of the agreement in important particulars, and the evidence presented does not call for so drastic and summary a remedy.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.