[No. 11610.   Department One. . May 7, 1914.]

TACOMA RAILWAY & POWER COMPANY, *Appellant*, v. THE CITY OF TACOMA, *Respondent*.[1]

MUNICIPAL CORPORATIONS—STREETS—ELECTRICITY — FRANCHISES—CONDITIONS—FORFEITURE—POWERS OF CITY. Under Rem. & Bal. Code, § 7507, subd. 7, empowering cities of the first class to control the use of streets and to authorize or prohibit the use of electricity at, in, or upon any of the streets, and to prescribe the times and conditions upon which the same may be used, a city of the first class, in granting a franchise to transmit and sell electric current furnishing power and heat and lighting for street cars, has power to insert the condition that the grantee shall not furnish electricity for lighting purposes and that breach of the condition should work a forfeiture of the franchise; especially where the charter adopted by the people intended to reserve to themselves the exclusive right to furnish light to the city and its inhabitants, to the extent of the ability of the city to do so.

ELECTRICITY—FRANCHISES—CONDITIONS—ABROGATION. The public service commission law, 3 Rem. & Bal. Code, §§ 8626-8, 8626-30, and

[1]Reported in 140 Pac. 565.

8626-33, dealing with the questions of the safety, efficiency, rates, and equality of public service, did not abrogate or affect a prior city franchise granting the right to transmit and furnish electric current for the purposes of furnishing heat and power and lighting for street cars on condition that the grantee should not furnish electricity for lighting purposes.

ELECTRICITY—FRANCHISES—FORFEITURE. Where a franchise ordinance for furnishing electricity for heat and power prohibited the furnishing of electricity for lighting purposes after the city should be able to supply the same, and provided for a forfeiture of the franchise and all property not removed from the streets within sixty days, on failure of the grantee to comply with any of its conditions after thirty days notice to do so, the grantee cannot complain of the forfeiture of the franchise and property, where it furnished electricity for lighting purposes under a revocable permit until the city was able to furnish the same, and continued to do so for more than thirty days after notice revoking the permit and requiring it to cease furnishing current for lighting purposes within thirty days or the city would consider the franchise null and void and forfeit all property not removed from the streets within sixty days, it appearing that the city was able to furnish the current for lighting purposes.

SAME. Where an electric power company was furnishing electric light to a railway company, under a revocable permit until the city was in a position to furnish the same, and refused to discontinue the lighting service upon notice, as required in its franchise, forfeiture of its franchise for breach of condition cannot be avoided by showing that both its power and lighting service had been furnished in one load to the railway company, which did its own transforming, and that the city was not in a position to take over the whole load, or that it would cost the railroad company a considerable sum to readjust its system to take lights from the city, where it appeared that the city had the ability to furnish the lights, and the railway company could have qualified itself to receive the same within the time limited, and was not complaining.

SAME—FRANCHISES—FORFEITURE—EVIDENCE. In an action to prohibit a city from forfeiting a franchise, evidence is inadmissible of a conversation between the grantee's superintendent and the city attorney prior to the passage and service of notice of forfeiture, whereby the city took definite action of which the grantee was duly notified.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered June 14, 1913, in favor of

the defendants, in an action for an injunction, after a trial to the court. Affirmed.

*James B. Howe* and *John A. Shackleford*, for appellant.
*T. L. Stiles* and *Frank M. Carnahan*, for respondent.

GOSE, J.—This is a bill in equity, to enjoin the city of Tacoma from forfeiting a franchise. The city filed an answer and a cross-complaint, asking that the franchise be declared forfeited. Issues were joined, the cause was tried, and ultimated in a judgment in favor of the city, terminating the franchise. The plaintiff has appealed.

The respondent, the city of Tacoma, is a city of the first class, and since 1893, has owned and operated a municipal lighting plant. In 1912, it qualified itself to take over the entire lighting business of the city. The appellant owns and operates a street railway system in the city of Tacoma. In 1890, the legislature passed an act (Laws 1890, p. 131) classifying cities, and empowering cities of the first class to frame their own charters. It also empowered them (Rem. & Bal. Code, § 7507, subd. 7 [P. C. 77 § 83]):

"To lay out, establish, open, . . . or otherwise improve streets, alleys, avenues, . . . and to regulate and control the use thereof, and to vacate the same, and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof."

In pursuance of this power, the respondent framed an independent charter, and amended the charter in 1896, prohibiting the legislative power of the city from granting to any person or corporation a franchise, privilege, or right "to sell or supply water or electric lights within the city of Tacoma to the city or any of its inhabitants," as long as the city owns a plant or plants for that purpose and is engaged in the public duty of supplying water or light, subject to the exception that the city might grant a franchise to

supply water or electric light to any part of the city not supplied or furnished by the city plant, "to cease and determine at such time as the city of Tacoma shall furnish and provide water and light in said section or part of the city." This amendment was carried into the charter of 1909.

In harmony with the charter, the city council, in 1905, adopted an ordinance granting to the appellant, its successors and assigns, for a period of twenty-five years, "the right, privilege, authority, and franchise," to erect and maintain poles, lines, and conduits and to stretch wires thereon along, across and underneath the streets and alleys of the city for the purpose of transmitting, distributing, and selling electric current, to be furnished and used for the purpose of furnishing "power and heat, or either of them," for power and heating purposes, and "for lighting street cars," and providing that it should not "furnish power to be used for lighting or generating electricity for lighting." It was provided that the stipulations in the ordinance should not prevent the city from granting the appellant "by special permit" the right to furnish electric current "for lighting purposes," subject to the provisions of the city charter and the laws of the state, "such permit, however, to be revocable at any time at the option of the city." The ordinance further provided:

"Section 11. That each and every right, privilege and authority and franchise by this ordinance granted shall, without the passage of any resolution, ordinance or any action of any kind whatsoever on the part of the city of Tacoma, be null and void and absolutely of no effect, upon the failure of said grantee, its successors or assigns, to perform any and all of the conditions in this ordinance specified and mentioned, for a period of thirty days after notice shall have been served upon said grantee, its successors and assigns, by the commissioner of public works of said city, under the directions and authority of the city council of said city to the effect that said city will, if said failure is not corrected before the expiration of thirty days from the serving of said notice, consider this franchise null and void and absolutely of

no effect because of the failure of said grantee, its successors
or assigns, to perform any and all of the conditions in this
ordinance specified; and in the event of the forfeiture of the
franchise hereby granted, on account of the breach of any
of the conditions herein, the said grantee, its successors and
assigns, shall also forfeit and surrender to the city of Ta-
coma, all poles, lines, wires, or other property that may be
located or constructed in pursuance hereof, within the city of
Tacoma, unless the same are removed within sixty days
thereafter and said streets, alleys and public places from
which they are removed put in good condition, and the same
shall thereupon become and be the property of said city of
Tacoma." Ordinance No. 2,295.

Another section of the ordinance provided that the grant
was subject to the right of the city at any time, on thirty
days' notice to the grantee, to repeal, change or modify the
grant, if the franchise granted was not exercised in accord-
ance with the provisions of the ordinance; "and the city
council reserves the right so to do, and this section shall be
considered as a cumulative and additional remedy to that
provided by section 11 of this ordinance." Another section of
the ordinance, in express terms, reserved to the city the right
to maintain and operate an electric light, heat, and power
plant. The appellant filed an acceptance of the ordinance, as
follows:

"And the said Tacoma Railway & Power Company, by its
manager and upon due authority of its board of directors,
agrees to be bound by the conditions, limitations and obliga-
tions set forth and contained in said ordinance."

In December, 1908, the appellant entered into a contract
with the Northern Pacific Railway Company, wherein it
obligated itself to furnish to that company, at its depot in
the city and at its shops in South Tacoma, all the electric
power that it uses "for power purposes and for lighting
purposes, for a period of ten years from the date of said
contract." On the second day of April, 1913, the city then
being qualified to take over all the lighting business within its

boundaries, passed a resolution revoking the permit which it had theretofore granted to the appellant to furnish electric current for lighting purposes, and providing that, from and after April 15 following, it should cease to furnish any current for that purpose. On April 21 following, the council passed a resolution, reciting that the appellant was then supplying electric current to be used directly and indirectly for lighting purposes. The resolution directed the commissioner of public works to notify the appellant that, in case of failure to comply with the terms and conditions of the ordinance before the expiration of thirty days after service of the notice, the city would consider the franchise granted by the ordinance null and void, and would claim a forfeiture of all poles, wires, lines, and other property located or constructed in pursuance of the ordinance, unless the same should be removed within sixty days as specified in § 11, and that the council would repeal the ordinance. The notice was served on April 23. The appellant declined to comply with the notice and on the 22d day of May, commenced this action, praying that the appellant be enjoined from repealing the ordinance or declaring the same null and void, and praying that it be enjoined from asserting a forfeiture.

The city answered, setting forth the matters and things to which we have adverted, and praying that the appellant be enjoined from furnishing electric power in the city, to be used directly or indirectly for lighting purposes; and that the ordinance to which reference has been made, "and every right, privilege, authority, and franchise granted thereby," be forfeited and declared to be null and void.

It was adjudged, that all the powers granted by the ordinance had been forfeited by the appellant in continuing to furnish the Northern Pacific Railway Company with power for lighting; that the ordinance should be null and void and of no further effect; that the appellant should be no longer entitled to exercise any privileges under it "except to remove

17—79 WASH.

its poles, lines, wires, and other property from the streets of said city;" that the appellant be enjoined from maintaining poles, lines, or stretching or maintaining wires thereon, in, over, upon, or across the streets or alleys of the city, and from transmitting electric current over said lines or wires for the purpose of furnishing "power or heat," or for any other purpose arising out of, or dependent upon, such ordinance. It was further adjudged that, unless the appellant shall "within sixty days after the entry of this decree, remove its poles, wires, and other property from the streets, alleys and public places of the city, the same shall be thereupon forfeited to and be the property of the city of Tacoma."

The appeal presents four principal questions: (1) Was the condition in the ordinance that the appellant should not furnish electricity for lighting purposes a valid one; that is, did the city have the power to so limit the franchise? (2) If so, was the limitation abrogated by the public service commission law (Laws 1911, p. 543)? (3) Did the refusal of the appellant to discontinue furnishing power to the Northern Pacific Railway Company for lighting purposes warrant the court in adjudging a forfeiture? And (4) Did the court commit error in excluding certain testimony. These questions will be treated in the order stated.

In respect to the first question, there seems little room for a difference of opinion. The statute quoted, Rem. & Bal. Code, § 7507, subd. 7 (P. C. 77 § 83), expressly empowers cities of the first class to regulate and control the use of streets, and to "authorize or prohibit" the use of electricity at, in, or upon any of the streets, "and to prescribe the terms and conditions upon which the same may be used, and to regulate the use thereof." Broader language could hardly be used. It is obvious that the legislature intended to, and did, vest the city with the whole of the state's police power touching the subject-matter. *State ex rel. Spokane & British Columbia Telegraph & Telegraph Co. v. Spokane*, 24 Wash. 53, 63 Pac. 1116; *Western Union Tel. Co. v. Richmond*, 224 U. S. 160;

*Coverdale v. Edwards*, 155 Ind. 374, 58 N. E. 495.   In the
*Coverdale* case, in considering a smilar question, the court
said: "The unqualified right to grant or refuse at discre-
tion carries with it the right to impose any terms on the
grant not forbidden by law."

Authority from the legislature to regulate and control the
use of the streets, to vacate them, to authorize or prohibit
the use of electricity upon the streets, and to prescribe the
terms and conditions upon which the same may be used, and
to regulate the use thereof, is so broad in its nature that it
is clear the legislature intended to empower cities of the first
class to hedge any such privileges with all the conditions that
the state itself could impose.   The charter adopted by the
people in pursuance of this authority shows that the people
intended to reserve to themselves the exclusive right to fur-
nish light to the city and its inhabitants, to the extent of the
ability of the city, and no statute has been cited which quali-
fies or limits the right of the people of cities of the first class
to do so.

The authorities cited by the appellant are upon facts and
conditions so variant, and upon statutes so dissimilar, that
they afford little or no aid in the solution of the question.   In
*Crawford Elec. Co. v. Knox County Power Co.*, 110 Me.
285, 86 Atl. 120, it was held that electric power was a com-
modity, and that the right to furnish it for light and power
is not a sovereign privilege but a business which was open to
any individual without special legislative grant, provided he
secured a permit from the municipal officers.

In respect to the public service commission law, and sec-
tions 8, 30 and 33 (3 Rem. & Bal. Code, §§ 8626-8,
8626-30, 8626-33), which are relied upon by the appellant,
it seems sufficient to say that that law deals only with the
questions of safety, efficiency, rates, and equality of public
service.   The power to grant a limited franchise is still in the
city.   No power was given to the public service commission
to grant, modify, or abrogate franchises or contracts arising

out of franchises, except in regard to rates and the regulation of service in respect to its safety, efficiency, and equality. It was not the purpose of the act to enlarge franchises, or to require the performance of acts being exercised under a franchise which could not be legally exercised, or for a longer period than such acts could be legally exercised. The appellant has cited *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913 D. 78; *Seattle Elec. Co. v. Seattle,* 206 Fed. 955, and *Worcester v. Worcester Consol. S. R. Co.,* 196 U. S. 539. In the *Webster* case, it was held that the right to fix the rates of telephone companies was vested in the public service commission. In *Seattle Elec. Co. v. Seattle,* Judge Rudkin held that the public service commission law withdrew from cities the power to fix rates for street car service. In the *Worcester* case, it was held that the state had the power to abrogate the limitations and conditions contained in a franchise. None of these cases are apposite to the question before us.

The forfeiture was adjudged under § 11 of the ordinance, which we have quoted. The authority to declare the forfeiture is so clearly expressed as to remove the question from the sphere of debate. The ordinance authorized a forfeiture of the franchise for a breach of any of its conditions, and provided for a forfeiture of all poles, lines, wires, or other property located or constructed, in pursuance of the ordinance, "unless the same are removed within sixty days, and said streets, alleys, and public places from which they are removed put in good condition, and the same shall thereupon become and be the property of said city of Tacoma." An additional remedy was given to the city to repeal, change, or modify the grant for a breach of its conditions upon thirty days' notice. But this section expressly provides that the remedy thereby reserved is "cumulative and additional" to the remedy provided in § 11. The resolution of April 2 revoked the special permit, theretofore given to the appellant, to furnish electricity for lighting purposes, to become ef-

fective on April 15.   The resolution of April 21, gave the appellant notice that the city would terminate its franchise altogether if it did not, within thirty days, cease to furnish electricity for lighting.   It further gave notice that, upon a failure to comply with its demands, it would claim a forfeiture of all instrumentalities used in pursuance of the ordinance unless the same were removed within sixty days, as specified in § 11 of the ordinance.   The appellant disregarded both resolutions and continued to furnish current for lighting after the thirty days had expired.   No reason is suggested why the forfeiture should not have been declared, other than the equitable maxim that equity abhors a forfeiture, and that courts will always proceed with great caution in directing the forfeiture of a franchise, and will only do so in clear cases.   These principles, of course, mean that ordinarily property will not be declared forfeited where the franchise or contract leaves a discretion in the court.   It is well settled that a city may declare a forfeiture of a franchise where matters of substance or of contract have not been complied with by the beneficiary.   *State ex rel. Sylvester v. Superior Court,* 60 Wash. 279, 111 Pac. 19; *Union Street R. Co. v. Saginaw Circuit Judge,* 113 Mich. 694, 71 N. W. 1073; *Coverdale v. Edwards, supra; Belleville v. Citizens' Horse R. Co.,* 152 Ill. 171, 38 N. E. 584, 26 L. R. A. 681.   In the Michigan case, the city was proceeding regularly to declare the relator's franchise forfeited upon grounds expressly reserved in the ordinance.   The relator thereupon filed a bill in equity to restrain the city from taking the threatened action.   The court held that the city was proceeding in exact accordance with the terms of the ordinance, and could not be restrained. In the *Sylvester* case, an ordinance repealing a franchise was sustained, on the ground that the franchise had not been accepted within the time prescribed in the ordinance, although no express power to do so was reserved.

The appellant cites and relies upon *Wakefield v. Village of Theresa,* 109 N. Y. Supp. 414; *City of Topeka v. Topeka*

*Water Co.*, 58 Kan. 349, 49 Pac. 79; *Illinois Trust & Sav. Bank v. Doud*, 105 Fed. 123; *State v. Real Estate Bank*, 5 Ark. 595, 41 Am. Dec. 109; *People ex rel. Los Angeles v. Los Angeles Independent Gas Co.*, 150 Cal. 557, 89 Pac. 108; *Commonwealth v. Newport, L. & A. Turnpike Co.*, 29 Ky. Law 1285, 97 S. W. 375. In the *Wakefield* case, the contract did not provide for a forfeiture. Moreover, the equities of the owner of the lighting plant were so preponderant that it would have been a gross miscarriage of justice to declare a forfeiture. In *City of Topeka v. Topeka Water Co.*, a forfeiture of a franchise was sought upon grounds not covered by the forfeiture clause contained in the ordinance, but for an alleged breach of other parts of the ordinance. The court denied a forfeiture, for the reasons stated, and upon the familiar equitable principle that equity does not look with favor upon forfeitures and will not ordinarily declare a forfeiture under such circumstances where there is another adequate remedy. *Illinois etc. v. Doud* is substantially to the same effect. In *State v. Real Estate Bank* it was said:

"Where the legislature has prescribed certain conditions upon which a corporation shall forfeit its franchises, those conditions supersede the common law, and they alone will constitute a just ground of forfeiture. But where the act of incorporation is silent as to what shall create a forfeiture, the common law doctrine is in full force. . . . Courts will always lean against a forfeiture."

In *People v. Los Angeles etc. Gas Co.*, the defendant was exercising a right given by the constitution of the state where no power of forfeiture was reserved. In *Commonwealth v. Newport etc. Turnpike Co.*, the court said that, the legislature not having defined the causes for a forfeiture of the franchise, a broad discretion rested in the courts to be exercised in an equitable manner.

The testimony shows that the appellant furnished electric power to the Northern Pacific Railway Company, both at its depot and at its shops in South Tacoma, at 2,300 volts, and

that the railway company did its own transforming. The appellant sought to show that the city was not in a position at the time it served its notice, or within the thirty days, to take over the whole load at South Tacoma. The evidence makes it clear that it was able to supply the railway company with power for lighting purposes. This is all the city, by either of its resolutions, sought to do. The appellant further sought to show that it would cost the railway company from $1,000 to $1,500 to readjust its system so as to take power for lights from the city. This is beside the question. The record shows that the city was in a position to supply the railway company with all needed power for lighting purposes upon short notice. Moreover, the railway company is not here complaining. It is apparent from the record that the railway company could have qualified itself to receive power from the city for all its lighting purposes within the thirty days; at least, it is not shown, and no attempt was made to show, that it could not do so. Under these circumstances, it is not necessary to apply the rule that a judgment will be held in abeyance where the rights of a public service company are involved, to the end that the public service will not be hampered.

The appellant also offered to prove a conversation with the respondent's superintendent of lights and with its city attorney, prior to the passage and service of the resolution of April 21. This was excluded by the court, upon the ground that, upon that date, the city itself took definite action of which the appellant was duly advised. There was no error in the rejection of any of this testimony.

The appellant, after the service of the second notice, and for more than the thirty-day period named in the resolution and fixed in the ordinance, proceeded in wilful disregard of the limitations of the city charter, the ordinance, and the notice, to supply current for lighting purposes to the Northern Pacific Railway Company, and cannot, therefore, complain that it has been held to the terms of its bond.

Counsel say in their reply brief that the decree of forfeiture "includes the lines by which the power for operating the street cars of appellant is transmitted from the city limits to the central station." We find nothing in the record to justify this statement. The judgment is limited to the franchise in question and the instrumentalities erected and used thereunder.

Affirmed.

CROW, C. J., ELLIS, MAIN, and CHADWICK, JJ., concur.