Indiana R. Co. *v.* Calvert—168 Ind. 321.

INDIANA RAILWAY COMPANY *v.* CALVERT ET AL.

[No. 20,819.    Filed April 4, 1907.]

168    321
169    625
169    631
169    633

1. STREET RAILROADS.—*Refusal to Perform Duty.—Performance by Others.*—A street railroad company may not complain because the mover of a house temporarily, and with due care, moved some of its wires, so that a building might pass, where a city ordinance required such company to remove such wires and it refused to do so.   p. 324.

2. MUNICIPAL CORPORATIONS. — *Streets. — Control. — Statutes.*— Section 267 of the act of 1905 (Acts 1905, p. 219, §3754 Burns 1905), being substantially a reënactment of the prior statutes, conferring upon cities and towns the exclusive control over their streets, must be considered as having been enacted in view of the judicial construction of such prior statutes.   p. 324.

3. NUISANCES.—*Moving Houses along Streets.—Municipal Corporations.*—The moving of a house along the streets of a city is not necessarily a nuisance, where done under municipal authority, with proper despatch, and where private rights are not unreasonably invaded.   p. 326.

4. SAME.—*License.—Special Damages.*—The moving of a house along a street, where done under municipal license, with despatch and without unreasonable invasion of private right, does not give a right of action in damages.   p. 328.

5. MUNICIPAL CORPORATIONS. — *Streets. — Control.—Supervision by Courts.*—The courts have no right to interfere with a city's exclusive, statutory control over its streets, unless some statute or some general principle of law affirmatively sanctions such right.   p. 328.

6. SAME. — *Streets.—Control.—Ordinances.—Legislative Acts.— Judicial Control of.*—The passage of an ordinance regulating the use of a street is a purely legislative act, and is not subject to judicial control.   p. 328.

7. SAME.—*Streets.—Occupancy by Street Railroad Company.— Nuisances.*—The occupancy of a street, without permission, by a street railroad company, constitutes a nuisance.   p. 329.

8. SAME. — *Streets.—Control.—Street Railroads.*—A municipal corporation has exclusive control over its streets, and may regulate a street railroad company's use thereof, though it has granted a franchise to such company to use such streets.   p. 329.

VOL. 168—21

9. MUNICIPAL CORPORATIONS.—*Streets.—Moving Houses Along.—Ordinances.—Police Power.*—Cities have the right, under their police power, to regulate, by ordinance, the moving of houses, owned by individuals, on and over their streets. p. 331.

10. POLICE POWER. — *Source of.* — *Maxims.* — The principle expressed by the maxim, "*sic utere tuo ut alienum non laedas,*" is the source of the police power; and the state's right to exercise such power is an incident to ownership. p. 331.

11. MUNICIPAL CORPORATIONS. — *Ordinances.* — *Statutes.—Police Power.—Constitutional Law.*—Statutes or ordinances passed in the exercise of the police power, which place reasonable burdens or regulations upon a particular business, are not for such reason unconstitutional. p. 332.

12. EMINENT DOMAIN. — *Police Power.—Streets.—Street Railroads.—Raising Wires.—Moving Houses.*—Compelling a street railroad company, by ordinance, temporarily to raise its wires to permit a house to be moved thereunder, is not a taking of property by eminent domain, though expense results. p. 332.

13. STREET RAILROADS.—*Contracts.—Police Power.*—Street railroad companies enter into their contracts with municipalities, and hold their property, subject to the continuing right of the public to exercise fully the police power. p. 333.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by the Indiana Railway Company against William B. Calvert and another. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*A. L. Brick, D. D. Bates* and *A. G. Graham,* for appellant.

*F. J. Lewis Meyer* and *Charles P. Drummond,* for appellees.

GILLETT, J.—Action by appellant, owner of an electric street railway, to recover damages occasioned to it by the moving of a house along one of the streets used by said company. The court found the facts specially, and stated a conclusion of law in appellees' favor.

It appears from the findings that at the time of the alleged grievance, and for more than ten years prior thereto, appellant was operating an electric street railway system upon certain of the streets of the city of South Bend, by

virtue of a contract with said city. One of the streets thus used was Washington street—an east-and-west street—on which appellant had a double track. At the time in question Washington street was a residence street, but it was much traveled by the public. Appellant operated two lines of cars thereon, the Washington-and Chapin-street car lines. On one of these lines cars ran every fifteen minutes, while on the other they ran every half hour. These lines were much used for local travel, and also by persons having occasion to use two interurban lines, with which appellant's cars made connection near the center of the city. Washington street was forty-five feet wide from curb to curb. The city had undertaken to regulate the matter of house moving for a limited distance along street railway tracks, and, to secure the privilege, an applicant was required to obtain a license from the city clerk, and, on the granting of the same, to give a twenty-four-hour notice to the local agent or manager of the company affected of what was to be done. Upon the applicant's complying with these requirements, the ordinance declared it to be the duty of the company so to raise or remove the wires as to allow the building to pass. Appellees, being desirous of moving a house along Washington street, from its then location on the north side of said street to the next intersecting street—Scott street—and from thence south to its intended place of destination, obtained the license required, and gave a twenty-four-hour notice to the company of their purpose. Upon the expiration of the time, they proceeded to move said house, which was eighteen feet wide, along the north side of Washington street to Scott street, a distance of 200 feet, and at that point the house was moved over appellant's tracks. Appellant refused to comply with the requirement of the ordinance relative to its duty, and, in moving the house, appellees were compelled to loosen four span wires, in order to push the north trolley wire to one side, and, when the house was moved across the

tracks, they lifted the trolley wires to pass under. Appellees promptly reattached the span wires, and moved the house without any unnecessary damage to appellant. The court found that the time occupied in doing the work was reasonable. For the space of five hours appellant was required to maintain an extra car on the Washington-street line, to enable passengers to transfer as said obstruction was reached. The court fixed the total loss and expense sustained by appellant by the moving of said house at $87.50. The items of loss which the findings enumerate are, an interference with a trip of the company's work-car, on which it had nine employes, a slacking of the north trolley wire, and its connecting bridle work, at certain street intersections to the west, and the expense of operating an extra car on the Washington-street line.

It seems scarcely necessary to say that, if the ordinance is valid, appellant has no standing to complain that a task which was devolved upon it by the ordinance was

1. performed, with due care, by appellees. *State v. Flannagan* (1879), 67 Ind. 140.

By the act of March 6, 1905 (Acts 1905, pp. 219, 407, §267, §3754 Burns 1905), it is provided that every city and town, except when otherwise provided by law,

2. shall have exclusive power over its streets. By §269 of said act (§3756 Burns 1905) every such corporation is given "exclusive power, by ordinance, to control and care for its streets." By the next section (§3757 Burns 1905) it is provided that whenever there is a grant of power or authority in the act, and no method is provided for the exercise of such power or authority, the method may be prescribed by ordinance. In substance, the above grants of power with reference to streets are contained in a number of the earlier acts concerning cities. 1 R. S. 1852, p. 215; Acts 1857, p. 42; Acts 1867, p. 33; Acts 1891, p. 122. It was said in *Wood v. Mears* (1859), 12 Ind. 515, 74 Am. Dec. 222, that the grant to the com-

mon council of exclusive power over streets and alleys con-
ferred "upon the common council plenary powers over the
streets and alleys of the city."    To the same effect see
*Indianapolis, etc., R. Co.* v. *State, ex rel.* (1871), 37 Ind.
489.    In *Citizens Gas, etc., Co.* v. *Town of Elwood* (1888),
114 Ind. 332, it was said: "Within reasonable limits, the
municipal officers have authority to regulate, by general
ordinances, the use and occupancy of its streets.    The
power over streets, vested by our statutes in municipal cor-
porations, is very broad and comprehensive.    Language of
wider scope than that employed by the legislature in con-
ferring authority over streets and alleys upon our towns
and cities could hardly be chosen."    In this connection it
may be said, as meeting a suggestion of counsel for appel-
lant, that it was held in *Wood* v. *Mears, supra,* that the
grant of power to prevent the encumbering of streets with
materials was not to be construed as a limitation which
would prevent the common council from regulating the use
of streets for any proper purpose.

The distinction between an attempted authorization per-
manently to obstruct public streets and the regulation of an
occasional and temporary occupation of them for commer-
cial or building purposes is recognized in a nuumber of
our cases.    *Wood* v. *Mears, supra; Pettis* v. *Johnson*
(1877), 56 Ind. 139; *State* v. *Berdetta* (1880), 73 Ind.
185, 38 Am. Rep. 117; *Senhenn* v. *City of Evansville*
(1895), 140 Ind. 675.    It was held in *Wood* v. *Mears,
supra,* that it was competent to authorize by ordinance the
partial obstruction of streets, for a reasonable time, with
materials designed for use in the construction of adjoining
buildings, Worden, J., saying: "The common council
having exclusive power over the streets, highways, and
alleys within the city, have the right to determine to what
purposes they may be applied, and under what circum-
stances, and to what extent, they may be encumbered.    In
a populous city, where much business is carried on, and

where buildings are being constantly erected, it becomes a matter of necessity that the streets should be used for many purposes other than travel; and it is peculiarly proper that each city should determine for itself what its wants and necessities, in this respect, demand." In connection with the statement of the limitations which attach to the doctrine, this court declared, in the comparatively late case of *Senhenn* v. *City of Evansville, supra,* that it did not doubt that the streets and sidewalks of a city "may, when authorized, be temporarily occupied for private purposes."

It is evident, in view of the judicial history of the prior acts concerning cities, that the present act stands deeply impressed with the holdings to which we have referred, and that, unless we can say that the moving of a house along a city street amounts to a use thereof so extraordinary as to be incapable of regulation, it must be held, as within the principle of the decisions of this court, with which, it is to be assumed, the General Assembly was familiar, that the act in question gave to the common council the power reasonably to regulate the use of its streets for such purposes.

A leading writer upon the law of nuisance says: "Indeed, it may be stated generally as the law, that any temporary use of a highway or street that is rendered absolutely necessary from the necessities of trade, or erection of buildings that does not unnecessarily or unreasonably obstruct the same, is lawful." 1 Wood, Nuisances (3d ed.), §256.

Apart from any question of municipal authorization it would appear that the question whether the moving of a house along a public street creates a nuisance depends upon the circumstances. As was said in *Graves* v. *Shattuck* (1857), 35 N. H. 257, 69 Am. Dec. 536: "The first and principal design of highways is an accommodation of the public travel, and cities and towns are required by statute to construct and maintain them in suitable condition for that purpose; but they may lawfully be used for other

purposes, provided such use be not inconsistent and incompatible with the reasonably free passage over them of whoever has occasion to travel upon them. They are designed and constructed for the general convenience of mankind, to be used for all those purposes to which from the earliest period of their construction they have been accustomed to be appropriated, and it cannot be a nuisance for anyone to use them as they have been ordinarily used. Very much depends upon locality, the width of the highway, and the time it may be obstructed by the alleged nuisance."

While it would, no doubt, be competent for a municipality to prohibit the moving of houses along its streets, at least in populous districts, yet where the undertaking, if done with municipal authority, does not unreasonably obstruct public travel, nor unduly invade private right, and the work is done with due expedition, it cannot be affirmed that a nuisance is thereby created. *Day* v. *Green* (1849), 4 Cush. 433; *Graves* v. *Shattuck, supra; Toronto St. R. Co.* v. *Dollery* (1886), 12 Ont. App. 679; *Rice* v. *Town of Whitby* (1898), 25 Ont. App. 191; *Eureka City* v. *Wilson* (1897), 15 Utah 53, 48 Pac. 41; Tiedeman, Mun. Corp., §300; 27 Am. and Eng. Ency. Law (2d ed.), 164. In *Day* v. *Green, supra,* Shaw, C. J., said: "That it is often useful and convenient that buildings should be so removed is found by experience; it may often be done, with little or no inconvenience to the public, under suitable and proper restrictions, adapted to each particular case; and therefore it seems highly proper that the power to authorize and regulate it should exist somewhere. Perhaps the power vested in municipal corporations to make salutary by-laws, for the regulation of the highways, is sufficient for this purpose." Judge Dillon has added to this case the weight of his authoritative opinion. 1 Dillon, Mun. Corp. (4th ed.), §395.

It is contended that the council cannot so license a nuisance as to prevent a recovery by a person specially

damaged thereby. There are authorities to this

4. effect, but we deny their application as applied to cases wherein the council possesses legislative authority to determine the rights of the parties. *Babbage* v. *Powers* (1891), 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398; *Murtha* v. *Lovewell* (1896), 166 Mass. 391, 44 N. E. 347, 55 Am. St. 410; *Sawyer* v. *Davis* (1884), 136 Mass. 239, 49 Am. Rep. 27. In the latter case, which was a suit to enjoin a nuisance, the court said: "And when the legislature directs or allows that to be done which would otherwise be a nuisance, it will be valid, upon the ground that the legislature is ordinarily the proper judge of what the public good requires, unless carried to such an extent that it can fairly be said to be an unwholesome and unreasonable law."

We would not be understood as affirming that cities possess general police powers, and all that we have to say concerning municipalities is to be understood as

5. subject to the general qualification that the streets are held by them in trust for the public, and that the power of the common council in respect to the use of such ways is limited to reasonable regulation; but, in view of the general grants of authority already adverted to, we do affirm that relative rights upon the street are subject to regulation to a reasonable extent for the common good. It will be observed that what is granted by the statute is power over the streets, and the provision that the power is exclusive forbids judicial interference except as the grant is controlled by other provisions of statute or by the general principles of law. In two instances this court has quoted with approval the following language from *Milhau* v. *Sharp* (1854), 17 Barb. 435, 438: "The corporation yet has the exclusive right to control and regulate the use

6. of the streets in the city. In this respect, it is endowed with legislative sovereignty. The exercise of that sovereignty has no limit, so long as it is within the

objects and trust for which the power is conferred. An ordinance regulating a street is a legislative act, entirely beyond the control of the judicial power of the state." *Wood* v. *Mears, supra; Indianapolis, etc., R. Co.* v. *State, ex rel., supra.* It was said in *Brinkmeyer* v. *City of Evansville* (1867), 29 Ind. 187: "A municipal corporation is, for the purposes of its creation, a government possessing to a limited extent sovereign powers. * * * The extent to which it may be proper to exercise such powers, as well as the mode of their exercise, by the corporation, within the limits prescribed by the law creating them, are, of necessity, intrusted to the judgment, discretion and will of the properly constituted authorities, to whom they are delegated." The case of *Wood* v. *Mears, supra,* clearly proceeds upon the theory that local needs are to be considered, and that the common council may regulate such reasonable and temporary uses of the streets as are customary and convenient, even to the extent of legitimating obstructions which would otherwise be regarded as nuisances. It is this consideration chiefly which distinguishes *Williams* v. *Citizens R. Co.* (1891), 130 Ind. 71, 15 L. R. A. 64, 30 Am. St. 201.

The question recurs, is there a right reasonably to regulate appellant in the use of its property, in order to serve local needs and conveniences? It is to be remembered that appellant has entered into a possession of the streets to extend over a long period of years, and that without the sanction of law its own possession would be a nuisance. *Denver, etc., R. Co.* v. *Denver City R. Co.* (1875), 2 Colo. 673. At the best, the company's occupancy has in it a considerable alloy of inconvenience, and it is to be observed that with the first direct sanction by the General Assembly of the use of electricity as a motive power for street-cars, it was careful to annex, in connection with the provision that cities might consent to such use, the proviso, "that nothing

in this act contained shall be so construed as to take away from the common councils of incorporated cities the exclusive powers now exercised over the streets, highways, alleys and bridges within the corporate limits of such cities. Acts 1891, p. 68, §5472 Burns 1901. It thus appears that the General Assembly, presumably having in mind the fact that the authorization of the obstruction of streets with trolley wires and their appliances might be construed to impinge upon municipal authority over streets, was careful to provide against the impairment of such authority, and, what is quite significant, in doing so it used the old language to which a settled meaning had attached. See *Richmond, etc., R. Co.* v. *Richmond* (1877), 96 U. S. 521, 24 L. Ed. 734. We cannot understand how it can reasonably be contended that a street railway company cannot be regulated in its use of the streets, since it possesses the very subject-matter over which power to the common council is granted, and for the court to deny the right to regulate is to abridge the statute.

In the case of *Edgewood Borough* v. *Scott* (1905), 29 Pa. Super. 156, there appears a very careful statement of the right of a municipality to regulate corporations in their occupancy of its streets. It was said: "A municipality has the right in the exercise of its police power, and it is its duty, to supervise and control the introduction and maintenance, upon and under the surface of the streets, of the various appliances which subserve the several urban uses, such as telegraph and telephone lines, water and gas pipes, street railways and sewers, to which the highways of a city or borough may lawfully be subjected. In the exercise of this power it may ordain reasonable regulations, not inconsistent with the laws of the commonwealth, for the good order and government of the municipality, the welfare of citizens, the protection of property and the conflicting rights and interests of the various individuals or corporations enjoying franchises to use the public streets." See, also, *Richmond, etc., R. Co.* v. *Richmond, supra.*

Appellant's counsel contend, however, that the regulation in question is not a legitimate exercise of the police power, and that the moving of a house is for private advantage, to the prejudice of a corporation which has contract rights in the street. While public travel is the primary use of a street, yet, as we have seen, it is not the only use to which it may be put, and as it is convenient and customary to move buildings along public ways, it seems peculiarly appropriate that the common council, which, as the representative of the inhabitants of the city, enjoys legislative power over the subject-matter to which the ordinance relates, should reasonably regulate the conduct of the parties with reference thereto. *Wood v. Mears* (1859), 12 Ind. 515, 74 Am. Dec. 222; *Eureka City v. Wilson, supra.* And see *City of Dubuque v. Maloney* (1859), 9 Iowa 450, 74 Am. Dec. 358. Such a regulation is not wholly one which relates to private interests. It affects the rights of real estate owners generally throughout the city, and it may be said to be of importance to the municipality. There may, in the legislative judgment, be a public advantage in encouraging property owners to place new and better improvements upon their real estate, and it is obvious that it might reasonably be regarded as quite unwise to pursue a course which would compel property owners either to allow buildings to remain upon sites which should be better improved, or to wreck such buildings as a means of getting rid of them. The principle which finds expression in the maxim, *sic utere tuo ut alienum non laedas,* has been said to be the source of the police powers, and to furnish the implied condition upon which every member of society possesses and enjoys his property. *Munn v. Illinois* (1877), 94 U. S. 113, 24 L. Ed. 77; *Orient Ins. Co. v. Daggs* (1869), 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552. Judge Cooley says: "The police of a state, in a comprehensive sense, embraces its system of internal regulation, by which the state seeks

not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as it is reasonably consistent with a like enjoyment of rights by others." Cooley, Const. Lim._(7th ed.), 829.   Rights for the most part are relative, and the mere fact that a statute or ordinance, which may reasonably be regarded as conducive to the welfare of the public, regulates a trade or business, or lays some burden upon it, does not render it unconstitutional.   *Parks* v. *State* (1902), 159 Ind. 211, 59 L. R. A. 190; *State* v. *Richcreek* (1906), 167 Ind. 217, 5 L. R. A. (N. S.) 874; 8 Cyc. Law and Proc., 864.   The ordinance in the case before us merely calls on the company temporarily to raise or remove its wires so as to allow the building to pass, and, as a consequential effect, to submit, with the rest of the public, to a disturbance of traffic in some degree.   It is clear that this does not constitute a technical taking of property, as that term is used under the law of eminent domain (*Richmond, etc., R. Co.* v. *Richmond, supra; Mugler* v. *Kansas* [1887], 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205), and, as the damage is a minor and inconsequential one, done under the police power, we are of opinion, so long as the interference cannot judicially be said to be unreasonable, that there is no right to damages, as it is a case wherein the company is merely controlled in the use of its property by a governmental regulation.   *Union Bridge Co.* v. *United States* (1907), 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; *Mugler* v. *Kansas, supra; Baltimore* v. *Baltimore, etc., Guarantee Co.* (1897), 166 U. S. 673, 17 Sup. Ct. 696, 41 L. Ed. 1160; 1 Dillon, Mun. Corp. (4th ed.), §141. It. is stated by a modern writer:   "In general terms the principle is that whenever an act is done without negli-

gence and in the exercise of a legal right, such damage as comes to another thereby is damage without injury. And the same principle applies whether the act is lawful on general principle, or is lawful merely because it is done under special legal authorization." 1 Street, Foundations of Legal Liability, 493. See, also, 1 Joyce, Damages, §§64, 71; *A. M. Richards, etc., Moving Co.* v. *Boston Electric Light Co.* (1905), 188 Mass. 265, 74 N. E. 350.

13. The mere fact that appellant enjoys contract rights in the street is not controlling. The regulation operates on the property, and it must always be understood that those who enter into such contract relations with the public as render their property reasonably subject to control do so with a knowledge that the police power is an inalienable and continuing authority. *Baltimore* v. *Baltimore, etc., Guarantee Co., supra; Chicago, etc., R. Co.* v. *Nebraska* (1898), 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219.

The ordinance in question, if valid, was a sufficient justification to appellees, and as we are unable to say that, as applied to the circumstances of this case, there was a transcending of the city's powers, it follows that the judgment of the court below must be affirmed.

It is so ordered.