FARMERS' AND MERCHANTS' CO-OPERATIVE TELE-
PHONE COMPANY *v.* BOSWELL TELEPHONE
COMPANY.

MCVICKER *v.* BOSWELL TELEPHONE COMPANY.

[Nos. 23,076, 23,087. Filed May 16, 1918.]

1. MUNICIPAL CORPORATIONS.—*Control of Streets.*—The streets of a city are a part of the general highways of the state, and the state has control over them whenever the interests of the public are concerned. p. 376.

2. MUNICIPAL CORPORATIONS.—*Control of Streets.*—The power of a municipality over its streets, where public interests are involved, is delegated to the municipality by the state, and this power may be withdrawn at any time. p. 376.

3. STATUTES.—*Subjects and Titles.*—The use of the state's highways, including streets of municipalities, by public utilities, and

the licensing of their use for such purpose are so inseparably connected that the "Act concerning public utilities," etc., Acts 1913 p. 167, §10052a et seq. Burns 1914, properly embraces the provisions of §97, relative to the granting and refusing of licenses. p. 377.

4. MONOPOLIES. — Statutes. — Validity. — Section 10052t3 Burns 1914 (§97, Acts 1913 p. 167) prohibiting the licensing of public utilities for duplication of service, in the absence of a declaration of public necessity therefor, does not create a monopoly · in the utility granted the first franchise, since the privilege is not exclusive, the state having power to grant another whenever public welfare would be served thereby. p. 378.

5. CONSTITUTIONAL LAW.—Statutes.—Police Power.—A statute that is conducive to the public welfare is not rendered unconstitutional by the mere fact that it regulates a particular business or lays some burden upon it. p. 378.

6. CONSTITUTIONAL LAW.—Police Power.—Classification.—Public Utilities.—Although the general assembly is prohibited from granting special privileges or immunities, it may, in the exercise of its police power, grant or withhold franchises to public utilities for user of the state highways, and in so doing may make discriminations and distinctions and judge of the reasonableness thereof. p. 379.

7. CONSTITUTIONAL LAW.—Special Privileges.—Just Compensation.—Section 10052t3 Burns 1914, Acts 1913 p. 200, prohibiting the granting of licenses to public utilities for duplication of service, in the absence of a certificate of public necessity from the Public Service Commission, is not a deprivation of any inalienable right to engage in a lawful business or to hold property, and is not repugnant to the Bill of Rights (§§1, 21, 23) securing the rights of life, liberty and pursuit of happiness, and prohibiting the taking of property without just compensation or the granting of special privileges or immunities. p. 380.

8. CONSTITUTIONAL LAW.—Equal Protection of the Laws.—Due Process.—Section 10052t3 Burns 1914, Acts 1913 p. 200, prohibiting the granting of licenses to public utilities for duplication of service in the absence of a certificate of public necessity from the Public Service Commission, is not violative of the fourteenth amendment to the federal Constitution. p. 380.

9. CONSTITUTIONAL LAW.—Obligation of Contracts.—The provision of the federal Constitution, (Art. 1, §10) prohibiting the enactment of laws impairing the obligation of contracts, is not violated by §10052t3 Burns 1914, Acts 1913 p. 200, relative to the granting of franchises to public utilities, since the latter act was enacted under the state's police power, and the exercise

## NOVEMBER TERM, 1917.    373

Farmers', etc., Tel. Co. *v.* Boswell Tel. Co.—187 Ind. 371.

of this power over contracts involving the state's welfare is not, except in rare instances, an impairment. p. 380.

10. CONSTITUTIONAL LAW.—*Who May Assert Unconstitutionality.*—That §101 of the Public Service Commission Act (§10052x3 Burns 1914, Acts 1913 p. 167), permitting a public utility to surrender its franchise and to operate under an indeterminate permit from the commission, is unconstitutional as an impairment of the obligations of the contract embraced in the franchise, cannot be asserted by one whose interests are so remote as those of a proposed competitor. p. 381.

11. INJUNCTION.—*Interference with Franchise Right.*—In an injunction suit by an existing public utility, a showing that another is proposing to give duplicate service in the same territory without the certificate of public necessity from the Public Service Commission, as required by §10052t3 Burns 1914, Acts 1913 p. 207, and that the interference indirectly affects the existing company's power to furnish adequate service, is sufficient to show such special interest of the plaintiff company as to authorize an injunction preventing interference until the certificate of public necessity is acquired, since in such case the remedy of damages is neither adequate nor efficient. p. 382.

12. INJUNCTION.—*Interference with Franchise Right.*—Where, at the suit of an existing telephone company, the erection of an exchange and poles within a town by another company was enjoined on the grounds that it had no certificate of public necessity, as required by §10052t3 Burns 1914, Acts 1913 p. 200, and upon application made thereafter the company was refused such certificate, the further acts of the proposed company in building an exchange just outside of the town limits, and of individual defendants in placing poles and wires along the streets for the purpose of connecting with the exchange, warranted further equitable relief. pp. 382, 383, 385.

13. NUISANCE.—*Telephone Poles and Wires.*—*Special Interest.*— The erection of telephone wires and poles in the streets of a town by a proposed company, intended to be continued in place for an indefinite period, and without authority from the Public Service Commission, constitutes a nuisance, which, being especially hurtful to an existing company, may be enjoined by the latter. p. 387.

From the Benton Circuit Court; *James P. Wason,* Special Judge.

Suits by the Boswell Telephone Company against the Farmers' and Merchants' Co-operative Telephone Company, Boswell, Indiana, and against Frederick McVicker

and others. From a judgment for plaintiff in each case, the defendants appeal. *Affirmed.*

*E. Burke Walker, Elmore Barce* and *Fraser & Isham,* for appellants.

*Charles Valentine McAdams* and *Clyde H. Jones,* for appellees.

HARVEY, J.—By order of this court the above causes were consolidated.

The Boswell Telephone Company was granted, in 1912, by the town of Boswell, Indiana, a franchise to operate a telephone exchange and plant. The company operated thereunder in the streets and alleys of said town until November, 1913, when the company surrendered its franchise and accepted from the Public Service Commission of Indiana an indeterminate permit, under which it is still operating. The telephone system of the company extended into territory adjacent to said town, and its exchange was, and is, connected with a large number of telephones in and beyond said town; and the company has an investment of about $20,000 in said plant.

In April, 1913, the Farmers' and Merchants' Co-operative Telephone Company of Boswell was incorporated; and the company applied to the town for a franchise to use its streets and alleys. The town board considered the form of such franchise, and advertised that the application would be heard by the board on a named date.

Thereupon the Boswell Telephone Company, appellee, applied to the circuit court for an order preventing the granting of a franchise to the Farmers' company, the petition alleging the foregoing facts and that the Farmers' company had not applied to the Public Service Commission for a certificate of public convenience and necessity justifying the duplication of investment in a telephone plant in Boswell; and alleging that the granting

of such franchise would result in such duplication and consequent detriment to the plant and service of the petitioner.

The Farmers' company, by affidavit, resisted the granting of such restraining order, alleging that the Boswell Telephone Company was seeking to monopolize the telephone business in said community; that the damage threatened to the Boswell company was merely that anticipated from prospective competition; that the granting of the order would restrain trade and commerce, and would be contrary to public policy; that the Boswell company had its remedy at law, in that it might appear before the board and resist the granting of said franchise, and recover damages if it suffer injury by the operation of the Farmers' company. A similar affidavit was filed by the town.

The court entered an order restraining the granting by the town of a franchise to the Farmers' company until the Public Service Commission of Indiana should first grant a certificate of necessity therefor.

The Farmers' company thereupon demurred to the complaint for the reasons that: (1) The court had no jurisdiction of the subject-matter; (2) the plaintiff had no legal capacity to sue; and (3) the complaint did not state facts sufficient. The demurrer was overruled, as was the motion to dissolve the restraining order. Upon its election not to amend, a permanent injunction was entered, with judgment against the defendant. Error is assigned upon each of said rulings.

Appellant's first proposition is that §97 of the Public Utility Act (§10052t3 Burns 1914, Acts 1913 p. 167, 200) is unconstitutional. That portion of said section here involved reads as follows: "No license, permit or franchise shall be granted to any person, copartnership or corporation to own, operate, manage or control any plant or equipment of any public utility in any muni-

cipality where there is in operation a public utility engaged in similar service under a license, franchise or permit without first securing from the commission a declaration after a public hearing of all parties interested, that public convenience and necessity require such second utility."

The first reason asserted in support of said proposition is that the title of the act is not sufficient to embrace §97, *supra,* in that the title is "An Act concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana, and conferring the powers of the railroad commission on the public service commission," whereas §97, *supra,* deprives municipalities of an inherent right and power to say, in the first instance, whether a franchise shall be granted which will result in such duplication of investment, and said title does not refer to, nor purport to affect, the powers of cities and towns.

Appellant argues that cities and towns have exclusive control of their streets, their power thereover limited only by necessity; and that this power cannot be destroyed by any such indirect legislation. This proposition overlooks the fundamental point that the streets of a municipality are parts of the general highways of the state, and, as such, the state has primary control thereover when the interests of the public are concerned; and such power thereover as municipalities have, when the interests of the general public are involved, are granted to the municipalities by the state (*Grand Trunk, etc., R. Co.* v. *City of South Bend* [1909], 174 Ind. 203, 89 N. E. 885, 91 N. E. 809, 36 L. R. A. [N. S.] 850), and may be withdrawn by the state; in effect, an agency for public welfare is thus established and may be thus ended in the municipality.

Appellant cites on its said proposition *Vandalia R.*

*Co.* v. *State, ex rel.* (1905), 166 Ind. 219, 76 N. E. 980, 117 Am. St. 370. This decision holds that a city or town cannot of its own will deprive itself by contract of powers delegated to it for public welfare. So far as it touches the question, this decision holds that as to streets and alleys, when public and general welfare are concerned, the power of cities and towns are not inherent but are conferred. The decision in *Indiana R. Co.* v. *Calvert* (1906), 168 Ind. 321, 80 N. E. 961, 10 L. R. A. (N. S.) 780, 11 Ann. Cas. 635, cited by appellant, is to the same effect. See, also, decisions cited to this point in *Winfield* v. *Public Service Commission* (1918), *ante* 53, 118 N. E. 531, 533; *Coverdale* v. *Edwards* (1900), 155 Ind. 374, 380, 58 N. E. 495; *State, ex rel.* v. *Stickelman* (1914), 182 Ind. 102, 106, 105 N. E. 777.

The use of the state's highways, including as a part thereof the streets of municipalities, by public utilities, and the matter of license to so use, are so inseparable that "An Act concerning public utilities" may properly embrace provisions for the granting or refusal of such licenses, and may name a new agency for the consideration of and action upon applications therefor. The title of said act embraces the subject-matter of §97, *supra*. *State Public Utilities Com.* v. *Monarch, etc., Co.* (1915), 267 Ill. 528, 108 N. E. 716, Ann. Cas. 1916A 528; *Illyes* v. *White River Light, etc., Co.* (1910), 175 Ind. 118, 93 N. E. 670; *Board, etc.* v. *Scanlon* (1912), 178 Ind. 142, 98 N. E. 801; *Marion, etc., Traction Co.* v. *Simmons* (1913), 180 Ind. 289, 102 N. E. 132; *Pittsburgh, etc., R. Co.* v. *Chappell* (1914), 183 Ind. 141, 106 N. E. 403, Ann. Cas. 1918A 627; *In re Talbot* (1914), 58 Ind. App. 426, 108 N. E. 240; *Halstead* v. *Olney J. Dean & Co.* (1914), 182 Ind. 446, 105 N. E. 903; *Central Plank R. Co.* v. *Hannaman* (1864), 22 Ind. 484.

Section 97, *supra*, does not create a monopoly in the

utility granted the first franchise. The utility holding the first and only franchise, so long as it is the only franchise, is practically, and only in that sense, a monopoly. That such practical monopoly may exist, see *Indianapolis Cable St. R. Co.* v. *Citizens St. R. Co.* (1891), 127 Ind. 369, 388, 24 N. E. 1054, 26 N. E. 893, 8 L. R. A. 539; *City R. Co.* v. *Citizens' St. R. Co.* (1896), 166 U. S. 557, 17 Sup. Ct. 653, 41 L Ed. 1114. But the utility has no exclusive privilege as between itself and the public welfare or interests. The state may authorize a second. If the state determines not to grant a second, it is not because the first is exclusive, but because, in the state's opinion, the public welfare will not be served by the second. Appellant took its charter from the state and asked a franchise from the town, knowing this to be the law. *Grand Trunk, etc., R. Co.* v. *City of South Bend, supra,* 214, 223. Therefore appellee's rights are not in the sense claimed a monopoly.

The state has not given to appellee, as appellant asserts "an exclusive monopoly which it did not have before," and taken "from appellant, and all manner of persons and corporations, a right they did have before this enactment," because whatever right appellee so took, and whatever right appellant theretofore had, were subject to regulation by the state, and "the mere fact that a statute or ordinance, which may reasonably be regarded as conducive to the welfare of the public, regulates a trade or business, or lays some burden upon it, does not render it unconstitutional." *Indiana R. Co.* v. *Calvert, supra,* 332.

The foregoing explanation of the relations of the state, municipalities and public utilities, each to the other, and their respective powers and rights, assists in disposing of several of appellant's other propositions, to wit:

Farmers', etc., Tel. Co. *v.* Boswell Tel. Co.—187 Ind. 371.

While the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to 6. all citizens, the assembly may, directly or indirectly, for the public welfare, grant or withhold franchises for the use of the public highways; and, in thus exercising its police powers, the state may make discriminations and distinctions, and judge of the reasonableness thereof. *Consumers' Gas Trust Co.* v. *Harless* (1892), 131 Ind. 446, 29 N. E. 1062, 15 L. R. A. 505; *Ferner* v. *State* (1898), 151 Ind. 247, 51 N. E. 360; *State* v. *Hogreiver* (1899), 152 Ind. 652, 53 N. E. 921, 45 L. R. A. 504; *Zumpfe* v. *Gentry* (1899), 153 Ind. 219, 54 N. E. 805; *Louisville, etc., R. Co.* v. *Garrett* (1913), 231 U. S. 298, 34 Sup. Ct. 48, 58 L. Ed. 229; *State* v. *Barrett* (1908), 172 Ind. 169, 87 N. E. 7; *Barrett* v. *State* (1912), 229 U. S. 26, 33 Sup. Ct. 692, 57 L. Ed. 1050; *Chicago, etc., R. Co.* v. *Railroad Commission* (1909), 173 Ind. 469, 87 N. E. 1030, 90 N. E. 1011; *Smith* v. *Indianapolis St. R. Co.* (1901), 158 Ind. 425, 63 N. E. 849; *Pennsylvania Co.* v. *State* (1895), 142 Ind. 428, 41 N. E. 937. In this action we may observe that, while there is conflict of authority and difference of judgment as to whether a healthy apprehension of competition will insure better service by public utilities than will be produced by franchises in any sense or degree exclusive (*Central N. Y. Tel., etc., Co.* v. *Averill* [1910], 199 N. Y. 128, 92 N. E. 206, 32 L. R. A. [N. S.] 494, 139 Am. St. 878; *State, ex rel.* v. *Stickelman, supra*, 107), such questions are to be addressed primarily to the legislature or to its designated tribunal; and under the statute now being considered each of such situations is to be judged in view of its peculiar circumstances, and thus the responsibility rests with the legislature or the public service commission, if a franchise

is refused to a competitor, to so supervise and regulate the existing utility as to insure the public welfare.

In view of the state's supervisory power, appellant is not deprived by §97, *supra,* of any inalienable right or liberty to engage in a lawful business or to hold property; nor is any such right or property taken from it without compensation; nor are privileges or immunities improperly granted. The exercise of the state's police power by the provisions of §97, *supra,* is not repugnant to §1, §21, or §23 of the Bill of Rights. Constitution Art. 1. *Townsend* v. *State* (1896), 147 Ind. 624, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. 477; *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N. E. 114, 33 L. R. A. (N. S.) 973, Ann. Cas. 1913C 724, and cases cited.

7.

For the same reason said section is not repugnant to the 14th amendment to the federal Constitution. *Chandler Coal Co.* v. *Sams* (1908), 170 Ind. 623, 85 N. E. 341; *Booth* v. *State* (1912), 179 Ind. 405, 100 N. E. 563, L. R. A. 1915B 420, Ann. Cas. 1915D 987; *Hammer* v. *State* (1909), 173 Ind. 199, 89 N. E. 850, 24 L. R. A. (N. S.) 795, 140 Am. St. 248, 21 Ann. Cas. 1034; *Parks* v. *State* (1902). 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190.

8.

Section 97, *supra,* is not repugnant to §10 of Art. 1 of the federal Constitution. It has been firmly settled that contracts made or franchises granted which involve the state's welfare are not, except in rare instances, such contracts that the exercise of the state's police power regarding the subject-matter thereof is an impairment of contract rights. Such contracts were made subject to the state's said power. *Grand Trunk, etc., R. Co.* v. *City of South Bend, supra; City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; *Butchers' Union Co.* v. *Crescent City Co.* (1883), 111 U. S. 746, 4 Sup.

9.

Ct. 652, 28 L. Ed. 585; *Stone* v. *Mississippi* (1879), 101 U. S. 814, 25 L. Ed. 1079; *Chicago, etc., R. Co.* v. *Nebraska* (1897), 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948.

Appellant asserts that §101 of the Public Service Commission Act (§10052x3 Burns 1914, Acts 1913 p. 202) is in contravention of §10, of Art. 1, of the federal Constitution, in that the permission thereby granted a utility to surrender its franchise and to take an indeterminate permit tends to impair and restrict the rights of appellant to have the Boswell company live up to its contract with the town. Appellant alleges no relation of any kind, existing or prospective, between itself and the Boswell company upon which appellant bases a right to compel the Boswell company to retain its franchise. Appellant says that "its rights, whatsoever they were, in respect to service and accommodation * * * is a contract, the obligations of which are protected by the constitutional guaranty." The decision in *Westfield Gas & Milling Co.* v. *Mendenhall* (1895), 142 Ind. 538, 41 N. E. 1033, cited by appellant, has no application. There the plaintiff sought to prevent the gas company from charging a rate in excess of that provided by the contract between the town and the gas company for the benefit of gas users, including plaintiff. The decision holds that the contract bound both the town and the gas company, so far as their respective rights and the rights of patrons were concerned. But the decision does not hold that even the rates involved in the Westfield contract, or any other phase of the contract concerning the state's general welfare, are beyond the state's police power. If the facts here otherwise brought this case within the purview of that decision, appellant does not allege that it stands as one desiring service of the Boswell company under any contract. A party whose interests are as

remote as those of a proposed competitor cannot with good grace assert that its rights in the existing franchise contract are such, and will be so far impaired that the statute should be held unconstitutional. *Currier* v. *Elliott* (1895), 141 Ind. 394, 39 N. E. 554.

Appellant asserts that, at most, the erection of a duplicate telephone plant will constitute only an obstruction of highways; that the complaint does not state facts sufficient, because the obstruction of a public street is an indictable offense, and neither a private citizen nor a private corporation has legal capacity to sue to abate such a nuisance. This does not fit the situation presented in this case. As we have seen, the public welfare requires adequate telephone service. The state has expressly reserved the power to say whether one public service company, in actual operation, shall be freed of competition and obliged to maintain its service, or shall be subject to competition in the interests of better service. Except for this public interest, the existing and proposed utility would be left by the state to care for their own respective interests. Because of this public interest, the state has by §97, *supra*, declared that one such company in operation shall not be subjected to competition without the state's consent. This is in effect a prohibition of duplicate use of the streets until the state consents. Utilities in actual operation are so far interested in their ability to maintain adequate service and thus discharge their obligations to the public that they are deemed proper parties to proceedings before the commission which may result in orders indirectly affecting their ability to render such service, and if aggrieved by an order, they have a right of appeal. In our opinion it follows that when such an operating utility alleges that another such utility and the town in which the first operates are threatening to disregard the state's reserve power; to

ignore the state's right to first pass upon questions of the state's welfare; and to thus indirectly affect the complaining utility's power to render adequate service, the latter company has a special interest and may, as appellee here seeks to do, secure an injunction preventing such interference until the state has expressed its opinion on the subject. *Williams* v. *Citizens' R. Co.* (1891), 130 Ind. 71, 76, 29 N. E. 408, 15 L. R. A. 64, 30 Am. St. 201; *City R. Co.* v. *Citizens' St. R. Co., supra; Indianapolis Cable St. R. Co.* v. *Citizens' St. R. Co., supra.*

Under the circumstances shown by the complaint a remedy for damages is neither adequate nor efficient. The purpose of §97, *supra,* is not alone protection to an operating utility from money loss, but the underlying purpose is public service, which should not depend upon the delays and uncertainties of an action for damages. *Thatcher* v. *Humble* (1879), 67 Ind. 444, 448; *Denny* v. *Denny* (1887), 113 Ind. 22, 14 N. E. 593; *Alexander* v. *Johnson* (1896), 144 Ind. 82, 41 N. E. 811; *Stauffer* v. *Cincinnati, etc., R. Co.* (1904), 33 Ind. App. 356, 70 N. E. 543.

We find no error in cause No. 23,087.

The original complaint in cause No. 23,076 of those here consolidated alleges that after the circuit court had enjoined the town of Boswell from granting the Farmers' company a franchise to erect a telephone plant in the town of Boswell duplicating that of plaintiff until the Farmers' company obtained from the Public Service Commission of Indiana a certificate to the effect that public necessity and convenience required such duplication; that said commission refused the application of the Farmers' company for such certificate; and that thereupon said Farmers' company proceeded to erect an exchange outside of and near the territorial limits of said town; and that the in-

dividuals originally made defendants in this action, and who reside in said town, gave out and stated that they would construct their own telephone lines from their residences and places of business in said town to a point outside of said town boundary; and that said Farmers' company would connect the same with said exchange; and that to accomplish said purpose defendants were threatening to place poles in the streets of said town and extend wires thereon to said exchange. That thereby said Farmers' company is preparing to render telephone service in said town, notwithstanding the injunction heretofore entered, and in disregard of the order of the Public Service Commission. That such acts will interfere with the income of plaintiff and its ability to render service, and depreciate the value of its telephone system, to petitioners' irreparable injury.

In said action a supplemental complaint was filed, making additional individual defendants; alleging that said additional individual defendants had joined the other defendants in making said preparations and threats; and that defendants after the commencement of this action did in the night enter said town, and did there locate and install telephones in their respective residences; and did proceed to run and place telephone wires and poles within the corporate limits of said town, over and across the public streets, alleys and grounds of said town, and extend same to said exchange where same were connected for telephone service; and said defendants are now "attempting" to operate their said telephone system within said town; and are busily engaged in placing other poles and extending wires thereon for such purpose. That each of said individual defendants knew at the time of said threats and acts that said Farmers' company had been denied a license to operate in said town. That the acts of defendants are in violation of laws relating to such matters.

Farmers', etc., Tel. Co. *v.* Boswell Tel. Co.—187 Ind. 371.

A temporary injunction was entered prohibiting said defendants from placing poles or wires in said town and making connections with said exchange after the date of the order, and the Farmers' company prohibited after said date, from rendering service over any of said wires in the town. A motion to dissolve and a demurrer to the complaint were overruled. Judgment was rendered on the demurrer and the order was made permanent. Each ruling of the court is assigned as error.

The facts here alleged show an intent to ignore the spirit and purpose of the act relating to a duplication of such service (§97, *supra*), and to indirectly accomplish that which the order of the commission, in effect, forbids. The preparations described are for rendering competitive telephone service in Boswell. Though the statute and the commission's order do not prohibit the erection and operation of an exchange contiguous to the town boundaries, both the statute and the order do prevent the rendering of telephone service within said boundaries. The effect upon the service of the Boswell company in the town would be as great as if the exchange were located in the town. The circuit court had jurisdiction of the subject-matter and of the parties; plaintiff's special interests were so far threatened as to justify plaintiff in seeking further equitable relief against the Farmers' company. *Williams* v. *Citizens' R. Co., supra,* 73; *Indianapolis Cable St. R. Co.* v. *Citizens' St. R. Co., supra; City R. Co.* v. *Citizens' St. R. Co., supra.* The things threatened and done by individual defendants are not essentially different in their effect upon the service of the Boswell company; they are using the streets of the town in an extraordinary manner, a manner which is unlawful unless sanctioned by the consent of the state and the town (*Williams* v. *Citizens, R. Co., supra,* 73; *Coverdale* v.

*Edwards, supra,* 383; *State* v. *Berdetta* [1880], 73 Ind. 185, 38 Am. Rep. 117), a manner which the state in effect has refused, to their knowledge, to permit. They are erecting and intend to operate telephone equipment in said town which will be a duplication of like equipment and service; and, as held by the commission, public needs and convenience do not require such duplication. *State Public Utility Com.* v. *Noble* (1916), 275 Ill. 121, 113 N. E. 910. There must be a limit to such use. *State, ex rel.* v. *Stickelman, supra,* 107. The state, by the statute and by the commission's order, has fixed this limit. The decision in *State Utilities Com.* v. *Bethany Tel. Assn.* (1915), 270 Ill. 183, 110 N. E. 334, Ann. Cas. 1917B 495, has no application here. The Illinois statute, as stated in said decision, "declares it to be lawful to construct, operate and maintain private telephone lines from house to house and grants the right, as against the public, to set the poles for such lines in the public streets, highways or alleys. The purpose for which appellant, the Bethany Mutual Telephone Association, was incorporated, as stated in its application for incorporation and in the certificate of incorporation issued by the Secretary of State, was 'to be for the private use of the members of said association only, for the purposes of telephonic communication between them, for their private and community interests and not for the pecuniary profit of any person or persons connected with said association, and not for the profit of any stockholder interested as owner of any interest in said corporation.'" The proposed use of the poles and wires so placed in the town of Boswell, and of the connection made with the Farmers' company exchange, is a public use, and is within the jurisdiction of the state Public Service Commission.

The allegations of the petition show that such poles and wires, so placed, are to continue in place for an in-

definite period, and this constitutes a nuisance. 13. *Indiana R. Co.* v. *Calvert, supra,* 329. Such nuisance, as shown by the petition, is especially hurtful to the petitioner.

The application for relief at equity as against the acts of the individual defendants was proper. No error appearing, the judgments of the court below in causes Nos. 23076 and 23087, respectively, are affirmed.

Spencer, C. J., dissents.

NOTE.—Reported in 119 N. E. 513. Legislative control over property of cities, 35 Am. St. 529. See under (1) 28 Cyc 846; (5, 6) 12 C. J. 936, 945, 1113, 1168, 15 Cyc 562.